## George R. Weathersly v. Arthur Weathersly.

1. Mortgage : conditional sale.—The difference between a mortgage and conditional sale is, that in a mortgage, though the time of payment be past, there is an equity of redemption, which continues until foreclosed or barred by the Statute of Limitations ; in a conditional sale, if the condition of payment is not com plied with at or before the time limited, the sale becomes absolute.

Weathersly *v.* Weathersly.

2. MORTGAGE: CONDITIONAL SALE: HOW DETERMINED.—The intention of the parties is to determine whether an agreement is to operate as a mortgage or conditional sale; and no mere form of words will prevail over this intention.

3. MORTGAGE: EQUITY OF REDEMPTION,—Where a conveyance of property is intended to operate as a mortgage, the subsequent agreement of the parties that it shall be irredeemable will not, in equity, take away the equity of redemption; "once a mortgage always a mortgage."

4. MORTGAGE: CONDITIONAL SALE: CHARACTER OF CONVEYANCE, HOW DETERMINED.— If it was the purpose of the parties to a conveyance to treat of a purchase, the value of the commodity contemplated, the price fixed, and the debt existing between them extinguished, it is a conditional sale; if their object was a loan of money, a security and pledge for its repayment, and the relation of debtor and creditor still exists, notwithstanding the transfer of the property, it is a mortgage. 2 Call. 421; 13 S. & M. 440; 28 Miss.' 339.

APPEAL from the Chancery Court of Rankin county. Hon. John Watts, judge.

Appellee filed his bill in the Chancery Court at Jackson, against appellant, to redeem certain slaves, which were alleged to have been mortgaged by appellee to appellant. The bill charges that in December, 1833, it was agreed that appellee was to convey certain slaves to appellant, and the latter was to indorse the note of the former for $2,800, payable in the Agricultural Bank, and to renew the same by indorsement if required; and that, if appellant should be compelled to pay this note, the slaves should be taken and considered to all intents and purposes as his property. Two written agreements were entered into, and made a part of the bill as Exhibits A and B, and in the following words:

"Agreement made and entered into between Arthur Weathersly and George R. Weathersly, on the 2d day of December, 1833. The said Arthur Weathersly on his part agrees to convey, by bill of sale, unto the said George R. Weathersly, the following named negroes, to wit: Rolin, Dinah, James, Ellick, Viney, Rhena, Tom and Jefferson. The said George R. Weathersly agrees to endorse, for the said Arthur Weathersly, a note for $2,800, payable and negotiable in the Agricultural Bank of Mississippi, and upon said note becoming due, to indorse for the said Arthur Weathersly to renew the same for twelve months longer. It is further agreed between the par-

ties, that if said note should not be renewed when the same becomes due, and the said George R. Weatherly shall be compelled to pay the same, then the negroes this day conveyed by the said Arthur Weatherly unto the said George R. Weatherly, to be taken and considered to all intents and purposes the property of the said George R. Weatherly, and should said note, after being renewed when it falls due, be paid by the said George R. Weatherly, then the title of the above-named slaves to be vested, and forever remain in the said George R. Weatherly.   In witness whereof the said parties have hereunto affixed their hands and seals, the day and year above written.

ARTHUR WEATHERSLY,    [L.S.]<br/>GEORGE R. WEATHERSLY,  [L.S.]

Test: D. A. STEUART.

Received 2d, and recorded 5th December, 1833.

JOHN P. STEWART, *Clerk.*

"Know all men by these presents, that I, Arthur Weatherly, for and in consideration of the sum of $2,800, to me in hand paid by George R. Weatherly, the receipt is hereby acknowledged before the signing and sealing and delivery of these presents, hath bargained, sold and delivered unto the said George R. Weatherly, the following-named negro slaves, to wit: Rolin, about thirty years of age; Dinah, about thirty years of age; James, about six years of age; Ellick, about seven years of age; Viney, about thirty years of age; Rhena, about seven years of age; Tom, about six years of age; and Jefferson, about eighteen months of age; to have and to hold unto the said George N. Weatherly, his heirs and assigns forever; and the said Arthur Weatherly for himself, his heirs and assigns, will forever warrant and defend the title of said slaves unto the said George R. Weatherly, his heirs and assigns forever; and will further warrant that said negroes are slaves for life, and sound in body and mind.

Given under my hand and seal this 2d day of December, 1833.

ARTHUR WEATHERSLY, [L.S.]

Test: D. A. STEUART.

Weathersly *v.* Weathersly.

The substance of the bill, answer, and proofs is fully stated in the opinion of the court.

The following errors were assigned by appellant:

1. The court erred in excluding the answer of Eli Montgomery to interrogatory No. 5; because no motion to suppress the same, nor written objections, was filed before or at the time of trial. Rev. Code, article 93, page 554.

2. The court erred in receiving the proceedings of the Superior Court of Chancery of the State of Mississippi, after the June Term, 1846, when the said cause was dismissed; said proceedings being void, for want of jurisdiction in said Superior Court of Chancery.

3. The court erred in decreeing the papers marked Exhibits A and B to the bill, to be a mortgage and not a conditional sale.

4. The court erred in the interlocutory decree foreclosing said Exhibits A and B as a mortgage.

5. The court erred in directing the commissioner in taking the account, to admit as testimony the evidence in cause No. 1093, in Superior Court of Chancery, the same having been taken without jurisdiction in said court, after the June Term, 1846.

6. The court erred in not dismissing the bill of complaint, it appearing from the testimony that complainant had refused to redeem, and had treated Exhibits A and B as a conditional sale and not a mortgage; and even if mortgage, had abandoned his right to redeem.

*O. R. Potter,* and *W. C. Harper,* for appellant, cited following authorities: Bacon's Abridgment, volume 7, pages 36, 37, 38. *Hoops* v. *Bailey,* 28 Miss. 328; *McGee* v. *Cutchings,* 33 Miss. 672; *Mason* v. *Moody,* 26 Miss. 184; *Davison* v. *Jones,* 26 Miss. 689; *Conway's Exrs.* v. *Alexander,* 7 Cranch, 218.

*Fulton Anderson* and *John D. Freeman,* for appellee, cited: *Barnes* v. *Holcombe,* 10 S. & M. 306, 4 Kent, 144; *Prewett*

v. *Dobbs*, 13 S. & M. 431; *Hoops* v. *Bailey*, 28 Miss. 333; *Weathersly* v. *Weathersly*, 31 Miss. 10 S. & M. 282, 314, 527; 1 S. & M. Ch. 366; 9 Wheat. 489.

HARRIS, J., delivered the opinion of the court.

Appellee filed his bill in the Superior Court of Chancery, to redeem certain slaves alleged to have been *mortgaged* by him to appellant. The bill charges that on the 2d December, 1833, it was agreed between the parties, that complainant was to convey the slaves to appellant, and appellant was to indorse the note of complainant for $2,800, payable at the Agricultural Bank, and to indorse the same on renewal, and that if appellant should be compelled to pay the same, then the slaves should be, to all intents and purposes, the property of appellant. Exhibits A and B contain the agreement relied on *as a mortgage.* The bill states that soon after the execution of these papers, the negroes were delivered to appellant, who had since held them. That the note was not discounted by the Agricultural Bank as expected. But admits that appellant procured for complainant $2,800 from another bank, on appellant's own bill, accepted by a friend, which sum complainant has never repaid.

The answer of appellant admits the execution of Exhibits A and B; says that complainant wished to raise money, and applied to appellant to indorse the note for $2,800, that complainant might borrow the money thereon from the agricultural Bank, and proposed to execute said writings (A and B), with the perfect and explicit understanding and agreement, that if appellant should have the said money to pay, the said negroes and their increase should be absolutely the property of appellant, and complainant should be discharged from all further liability to appellant on account thereof. That said writings (A and B) were not intended by these parties to operate as a *mortgage,* but as a *conditional sale,* and the slaves were thereupon placed by complainant in appellant's possession. That appellant indorsed said note, but the Agricultural Bank refused to discount it. Complainant and his friends then tried to raise the money in another way, and prevailed upon Eli

Montgomery to accept a bill drawn by appellant, on which the money was raised from the Planters' Bank, and paid over to complainant by appellant, without the name of complainant, but on the credit of appellant and his friends.

Appellant drew said bill at the request of complainant, and procured the money thereon on his promise, that if the Agricultural Bank finally discounted the note first above referred to (and which had been left there for that purpose), the money should at once be applied to pay said bill; and the express agreement was that appellant should hold the slaves, in the same way, under said agreements (A and B), as if the money had been procured on said original note; said note was never discounted, and complainant never paid said bill, but refused to do so. The answer then sets up acts and·declarations of complainant, tending to show that he regarded the transaction as a sale and not a mortgage; and finally insists that if the original transaction be held as a mortgage, that complainant, by his acts and declarations and refusal to redeem, should be regarded as having waived and abandoned his right of redemption; relies on his long possession of the negroes, and pleads the statute of limitations.

The deposition of Eli Montgomery, taken in a former suit, and read in this, by consent, proves that appellant got the money for complainant; that complainant agreed to meet the bill; that appellant repaid him (witness) the money so advanced on said bill. He also proves that complainant urged appellant to take the negroes he had mortgaged, as it would be ruinous for him to redeem; he heard this on several occasions. Appellant was exceedingly anxious that he should redeem them, and was importunate on that subject.

The deposition of Norman shows an understanding between complainant and appellant, that appellant was to pay at least "three" bales of cotton for the hire of said negroes—this is drawn from a conversation between them in 1852.

The deposition of Sheil construes the agreements A and B, and decides them to constitute an absolute sale; proves conversations between the parties in relation to the "repurchase" of

said slaves.   He proves a proposition by appellant to complainant to take the negroes back, and pay appellant the money he had to pay out for them; and on making this proposition, appellant gave as a reason for it that the amount, $2,800, was more than he wanted to invest in slaves at that time.   To this proposition he testifies that complainant acceded, saying that he would do as George proposed.

Upon this state of facts a decree was rendered in the court below in favor of complainant for redemption, and for him from the 2d December, 1833, to the date of decree, except certain of said negroes which had been sold by complainant, or for his debts under execution against him.   The decree appoints a commissioner to take an account, with directions in relation thereto, and in case a balance is found due appellant, a decree of foreclosure and sale be entered, reserving all other matters, etc.

From this decree the appeal is prosecuted here.

We deem it unnecessary to notice the first, second, and fifth grounds of error assigned, further than to say that the first presents an immaterial matter, not to the prejudice of appellant.  The second is not well taken, because the record and proceedings of the Superior Court of Chancery, filed as exhibits in this case, were properly before the court, for the purpose of showing complainant's right to further prosecute this suit within the time limited by the statute.   The fifth ground of error assigned is a mistake in point of fact.   The third, fourth, and sixth assignments all relate, first to the true construction of the agreements A and B, upon their face, and in connection with all the testimony in the cause tending to show what was the original intention of the parties; and second, to the point, that the testimony shows a waiver or abandonment of all right to the property in dispute by the complainant.

The difference between a mortgage and a conditional sale is striking and important.   In the mortgage, though the time of payment be past, there is yet an equity of redemption, which, unless sooner foreclosed, will continue until barred by the statute of limitations.   2 Call R. 428.   But in the case of a conditional sale, if the condition of payment is not *strictly* per-

formed, at or before the time limited, the right is gone forever, and there is no subsequent power of redemption. 1 Call, 292.

To ascertain whether the agreements A and B were designed as a mortgage or conditional sale, the authorities hold that we are to look to the intention of the parties at the time of the making of the contract. 1 Washing. 126; Powell on Mortgages. If it was intended as a mortgage, courts of equity will not suffer it to be converted into an absolute or conditional *purchase*, by any form of words. 1 Washing. 126; Tuck. Lect., page 101. The *intention* which we are to investigate, is whether the parties designed a purchase and sale on the one hand, or a borrowing and lending on the other; whether they were treating of an absolute or conditional sale, or of the loan or procurement of money on security, by the conveyance of property. If the transaction show that it was designed to borrow money upon a security therefor, nothing can divest it of the equity of redemption, for it is a mortgage; and, if a mortgage, not even the agreement of the parties, that it shall be irredeemable, would control or change the rule in equity. Tuck. Lect., page 101, 102, and cases cited; 1 Font. Equit., page 267; 1 Washing. 126; *Thomson* v. *Davenport*, 1 Call, 280; *Chapman* v. *Turner*, 1 Washing. 17.

In the case of *Robertson* v. *Campbell et al.*, 2 Call, page 421, Judge Pendleton says: "It must often happen that there will be a difficulty in drawing the line (distinction) between these two sorts of conveyances. The great *desideratum* which this court has made the ground of their decision, is whether the purpose of the parties was to treat of a purchase, the value of the commodity contemplated, and the price fixed, or whether the object was a loan of money, a security or pledge for its repayment. See also 1 Rand. 121, *Roberts, Admr.* v. *Cocke.*

In this State the rule has been stated as follows: "A deed, absolute on its face, will be held valid and effectual as a mortgage, if it clearly appear that it was designed by the parties thereto to operate as a security for the repayment of money. 13 S. & M. 440, *Pruvell* v. *Dobbs.* See 4 Kent, 9th edition, pages 158, 159, 160, and cases cited in notes.

In *Hooper* v. *Bailey*, 28 Miss. R., page 339, this court says, that when the relation of debtor and creditor remains, and a debt still subsists, it is a mortgage. But if the debt be extinguished by the agreement of the parties, by the execution of the conveyance, and the grantor has the privilege of refunding, and to entitle himself to a reconveyance thereby, it is a conditional sale.

Tested by these rules, it is clear that the agreement in the case before us (Exhibits A and B), whether regarded by themselves, or in the light of all the testimony bearing on the transaction in the record, must be regarded as a mortgage.

The parties did not contemplate a sale; there was no agreement of their minds, nor even a suggestion as to the value of the negroes, or any price fixed. The complainant wanted to borrow on long time $2,800, and that was the sum raised for him, without reference to the price or value of the negroes. At the time agreements A and B were entered into, and for four month afterwards, there was no indebtedness existing between these parties, for which or upon which a contract of sale could have been based. When they made these agreements, they were made in reference to the arrangement for borrowing money upon complainant's own note, with appellant as his indorser, and these papers were designed as security to him as indorser, and had no other consideration or aspect. The money could not be obtained on this note, and appellant and his friends borrowed the money from the Planter's Bank, on their own names without complainant's name, and with the understanding with complainant that if he should finally get the money from the Agricultural Bank, on his own note, that the amount should be applied to the payment of appellant's bill in the Planters' Bank; and that at all events appellant would pay the $2,800, borrowed for his use from the Planters' Bank, back at the maturity of the bill; and to indemnify appellant and secure this object, the bill of sale and agreement, A and B, were retained by appellant as a security for that purpose.

Exhibit B is an ordinary bill of sale for the negroes in dispute. Agreement A stipulates for the execution of this bill of

sale to appellant, for the negroes by name, by complainant; and appellant on his part thereby agrees to indorse complainant's note to the Agricultural Bank for $2,800, and also renew indorsement for twelve months longer, when the first shall fall due. They further agree that if the note should not be renewed when it becomes due, and appellant shall be compelled to pay it, then the negroes conveyed by the bill of sale to appellant shall be taken and considered, to all intents and purposes, the property of appellant; and should said note after renewal be paid by appellant after it falls due, then title of said negroes to be vested and forever remain in the said appellant.

In effect these two instruments constitute a mortgage with a stipulation that it shall be irredeemable, or in other words, that upon default of the mortgagor to pay his liability, or relieve his indorser or security, the title to said negroes shall become vested and forever remain in the mortgagee, and become his absolute property.

This agreement, we have already seen, will not be enforced in a court of equity. Chancellor Kent, in his Commentaries, 4th volume, page 177, says: " The equity of redemption grew in time to be such a favorite with courts of equity, and was so highly cherished and protected, that it became a maxim, that ' Once a mortgage, always a mortgage.' "

The object of the rule is to prevent oppression; and contracts made with the mortgagor to lessen, embarrass, or restrain the right of redemption, are regarded with jealousy, and generally set aside as dangerous agreements, founded in unconscientious advantages assumed over the necessities of the mortgagor. He says the doctrine was established by Lord Nottingham in 1681 in *Newcomb* v. *Bonham* (1 Vernon, 7, 232, and 2 Ventris, 364). The same doctrine was pursued i n *Howard* v. *Harris*, (1 Vernon, 190), and it pervades all the subsequent and modern cases on the subject, both in England and in this country. See note (*a*) and cases cited, and *Baxter* v. *Child*, 39 Maine R., page 110 ; *Waters* v. *Randall*, 6 Met., page 479. There is nothing in the facts of this case, as shown by the witnesses, which can affect the application of these views and principles to the agreements A

and B before us. They detail some loose conversations, sometimes denoting these agreements as mortgages, sometimes as a sale, but certainly, in both cases, referring to their construction of the agreement, as contained in these writings, without regard to their legal effect. There is no pretence that these conversations, declarations, or propositions, ever amounted to a new contract, upon sufficient consideration, to change, or in any manner defeat, the legal operation of the writings A and B. They must therefore be treated as a mortgage, with the right of redemption.

Let the decree be affirmed.