POWERS *v.* FISHER.

1. APPEAL AND ERROR—MOTION TO DISMISS—ALLEGATIONS OF BILL TAKEN AS TRUE.

   Allegations of bill of complaint are taken as true for purposes of appeal from order granting motion to dismiss.

2. EQUITY—JURISDICTION—REMEDY AT LAW.

   To preclude entertainment of equitable jurisdiction, a remedy at law must be complete and ample and not doubtful and uncertain.

3. CONTRACTS—PRIVITY OF CONTRACT—ACTION AT LAW.

   Plaintiffs, assignees of vendors' interest in contract for sale of dairy business, good will and equipment, may not sue, in an action at law, assignees of vendees' interest under either the original contract for lack of privity of contract, nor under contract between vendees and their assignees whereby latter assumed and agreed to pay a certain amount to the original vendors according to the terms of the original contract, as vendees' assignees' promise was not made to vendors or their assignees.

4. EQUITY—JURISDICTION—MULTIPLICITY OF SUITS.

   Avoidance of multiplicity of suits as a ground for equitable jurisdiction is where one equitable suit is substituted in place of all other kinds of judicial proceedings by means of which the entire controversy may be finally settled.

5. SAME—JURISDICTION—ENGLISH CHANCERY COURTS.

   The jurisdiction of courts of equity in this State is coextensive with the powers and jurisdiction of courts and judges in chancery in England (3 Comp. Laws 1929, § 13944).

6. SAME—CONCURRENT JURISDICTION—REMEDY AT LAW.

   A court of equity has concurrent jurisdiction where a legal remedy is not available, the equitable remedy is more efficient or the procedure in equity affords advantages which are not attainable at law.

7. SAME—CONTRACTS—ASSIGNMENTS—ASSUMPTION OF LIABILITY—SUBROGATION—MULTIPLICITY OF SUITS.

   Holder of vendors' interest in contract for sale of dairy business, good will and equipment *held,* entitled to sue in equity to recover balance due thereunder in order to avoid a multiplicity

of suits where vendees and their assignees are made parties and latter have assumed to pay amount due under original contract by terms of their assignment, as such assignees become principal debtors and their assignors, their sureties, the principles of subrogation being applicable.

8. SALES—CONDITIONAL SALES CONTRACT—CHOSES IN ACTION—MONEY.

A conditional sales contract may cover all chattels personal, including fixtures, except choses in action and money.

9. PROPERTY—CHOSE IN ACTION—DEFINITION.

A chose in action includes all personal chattels that are not in possession, a personal right not reduced into possession recoverable in a suit at law.

10. SAME—CHOSE IN ACTION—MONEY—UNIFORM SALES ACT.

Things in action and money are expressly exempted from operation of the uniform sales act (2 Comp. Laws 1929, § 9515).

11. SAME—PERSONAL—CLASSIFICATION.

Personal property is divided into corporeal and incorporeal, tangible and intangible.

12. REPLEVIN—GOOD WILL—DAIRY BUSINESS.

Replevin will not lie for good will and dairy business sold under a contract since they are intangible.

13. TROVER AND CONVERSION—GOOD WILL—DAIRY BUSINESS.

Trover will not lie for good will and dairy business sold under a contract since trover lies only for tangible property.

14. EQUITY—ADEQUACY OF REMEDY AT LAW—JURISDICTION—PARTIES.

Since plaintiffs, assignees of vendors' interest under contract for sale of dairy business, good will and equipment, may maintain action of replevin or trover against vendees' assignees based on tangible property only, and maintain action of assumpsit only against vendees who, if unsuccessful, could sue their vendees in assumpsit under the assignment, equity will take jurisdiction to settle all the litigation in one suit and afford plaintiffs a complete and adequate remedy.

15. SALES—CONDITIONAL SALES CONTRACTS—VENDOR'S REMEDIES—PASSING TITLE.

Vendor under a conditional sales contract may, upon default by vendee, retake possession of the property or may sue and re-

cover judgment for the purchase price but if he sues for the value of the property, he elects to pass title.

16. SAME—INCONSISTENT RIGHTS.

A conditional sales contract may reserve to the seller two inconsistent rights, giving him the election to sue upon the obligation to pay or to retake possession of the property, but he may not do both.

17. EVIDENCE—PRESUMPTIONS—CHATTEL MORTGAGES.

Since vendees who purchased dairy business, good will and equipment will not be presumed to have sold to their assignees property which did not belong to them, the presumption is that unrecorded instrument of purchase was treated by vendees as an unrecorded chattel mortgage.

18. CHATTEL MORTGAGES—CONDITIONAL SALES CONTRACTS—DEFAULT IN PAYMENT—WAIVER—FORFEITURE.

Under a chattel mortgage, if there be a default in payment, there is an equity of redemption which must be foreclosed, while in a conditional sale the condition of payment must be strictly performed unless waived, although tender of full payment by vendees' assignees before possession taken by vendors' assignees would prevent a forfeiture.

19. SALES—CONTRACTS—ACCELERATION CLAUSE—INSURANCE—CHATTEL MORTGAGES—CONDITIONAL SALES CONTRACTS.

Fact that contract for sale of dairy business, good will and equipment contains an acceleration clause or a clause requiring vendees to keep property insured held, insufficient to constitute the contract a chattel mortgage rather than a conditional sale.

20. EQUITY—MONEY DECREE FOR DEFICIENCY.

Plaintiffs, assignees of vendors' interest under contract to sell dairy business, good will and equipment to defendant vendees who in turn assigned it to defendant assignees who assumed vendees' obligation for payment of money to plaintiffs' assignors, who did not attempt to take possession of the property or to forfeit defendants' rights thereto but elected to begin suit to foreclose contract and recover deficiency held, to have elected to waive title to property and are restricted to recovery of money decree against defendants.

SHARPE, J., dissenting.

Appeal from Eaton; McPeek (Russell M.), J. Submitted January 6, 1937. (Docket No. 46, Calendar No. 39,244.) Decided April 22, 1937.

Bill by Seroll E. Powers and wife against Roy Fisher and wife and L. P. Smith and Raymond Smith, doing business as a partnership under the name of L. P. Smith & Son, to foreclose a contract, for a deficiency decree and other relief. From order dismissing bill on defendants' motion and granting right to transfer case to law side of court, plaintiffs appeal. Reversed and remanded.

*Horace K. Powers,* for plaintiffs.

*C. B. Fisk Bangs,* for defendants.

POTTER, J. This case had its origin in a bill of complaint filed by plaintiffs against defendants for an accounting, foreclosure and sale of certain property, and for deficiency. The trial court held plaintiffs had a complete and adequate remedy at law and ordered the case transferred to the law side of the court for further proceedings, with the understanding plaintiffs could make such alteration of the pleadings as they deemed proper therein. Plaintiffs appeal.

Alton R. Fisher and Belle Fisher, his wife, October 28, 1929, agreed to sell to Roy E. Fisher and Edith M. Fisher, husband and wife, and to the survivor of either, parties of the second part, certain property. The language of the contract is:

"Said first parties hereby covenant and agree to sell and convey to said second parties and the survivor of each of them all the good will and the dairy business located at the above address (241 N. Clinton street, Charlotte, Michigan), including the follow personal property:"

Then follows a specific description of a considerable amount of tangible personal property used in connection with the dairy business agreed to be sold.

First parties, on receiving payment in full, were to make, execute and deliver to second parties a bill of sale of the property free and clear from all incumbrances except those that might have accrued through the acts or neglect of second parties. Second parties were to pay all taxes which might be levied or assessed against the property until the purchase price was fully paid, and keep the personal property insured against loss or damage by fire and wind and to assign the policies to first parties.

Subsequently, June 26, 1930, Roy E. Fisher and Edith M. Fisher, Leona Lindstrom and Gertrude Cook, parties of the first part, assigned this contract to L. P. Smith and Raymond Smith, parties of the second part, and

"Said second parties do hereby assume and agree to pay to said Alton R. Fisher and Belle Fisher the sum of $3,520.82 according to the terms of said contract."

Alton R. Fisher and Belle Fisher assigned their interest in the contract to Nancy J. Purdun, July 28, 1931, and Nancy J. Purdun assigned her interest in the contract to Seroll E. Powers and Clara Belle Powers, August 26, 1932.

At the time of the filing of the bill of complaint, there was claimed to be due $974.24, with interest from November 1, 1935. The bill of complaint alleges the last payment made on the contract was made by L. P. Smith out of the proceeds derived from the sale of good will and patronage and bottles of said milk business; said L. P. Smith and son have only a small amount of equipment of the approximate value of $300 on hand; L. P. Smith denies all liability under the contract and refuses to make any further payments; Raymond Smith refused or is un-

able to make any further payments on the contract; and that Roy Fisher and Edith M. Fisher are insolvent and unable to perform their obligations on the contract. According to the allegations of the bill of complaint, which must be taken as true for the purposes of this case, L. P. Smith, the assignee of the vendees under the contract in question, is the only defendant financially responsible.

The first question for determination is whether or not the plaintiffs have a complete and adequate legal remedy.

"A remedy at law, in order to preclude a suit in equity, must be complete and ample, and not doubtful and uncertain." *Edsell* v. *Briggs,* 20 Mich. 429.

The fact that there is a legal remedy is not the criterion. That legal remedy, both in respect to its final relief and its modes of obtaining the relief, must be as effectual as the remedy which equity would confer under the circumstances or else the concurrent jurisdiction attaches. 1 Pomeroy Equity Jurisprudence (3d Ed.), § 280.

Plaintiffs could not, at law, sue L. P. Smith, the only person financially responsible. There is no privity of contract between the assignees of the vendors and the assignees of vendees under the original contract. *Anderson* v. *Thompson,* 225 Mich. 155; *Tapert* v. *Schultz,* 252 Mich. 39. The promise of the Smiths was made to the vendees under the original contract and was not made to vendors, and plaintiffs as assignees of the vendors cannot bring an action upon such promise. In order for plaintiffs to reach, at law, defendants Smith, it would be necessary for them to institute suit against Roy Fisher and Edith M. Fisher and possibly against Leona K. Lindstrom

and Gertrude Mae Cook, and after exhausting their remedies against Roy Fisher and wife, they (Fisher and wife) would have a right to institute suit against Smith and son. It is precisely upon this ground that a court of equity may entertain jurisdiction. The theory of saving a multiplicity of suits as a ground for equitable jurisdiction is that one equitable suit is substituted in place of all other kinds of judicial proceedings by means of which the entire controversy may be finally settled. 1 Pomeroy Equity Jurisprudence (3d Ed.), §§ 245, 274.

The jurisdiction of courts of equity in this State is coextensive with the powers and jurisdiction of courts and judges in chancery in England, etc. 3 Comp. Laws 1929, § 13944.

Where a legal remedy is not available and the equitable remedy is more efficient, or where the procedure in equity affords advantages which are not attainable at law, the court of equity has concurrent jurisdiction. 13 Halsbury's Laws of England, p. 10.

"As between the assignor and the assignee, the latter becomes the principal debtor and the former a surety * * * and the principles of subrogation apply * * * To this may be added the equitable doctrine of avoidance of multiplicity of suits and the province of equity to afford full relief and protect all rights." *Barnard* v. *Huff,* 252 Mich. 258 (77 A. L. R. 259).

It is contended that the contract involved is a conditional sales contract. A conditional sales contract may cover all chattels personal, including fixtures, except choses in action and money. 55 C. J. p. 1200. A chose in action includes all personal chattels that are not in possession, a personal right not reduced into possession recoverable in a suit at law. *Colonial Bank* v. *Whinney,* 30 Ch. Div. 261, 282 (56 L. J. Ch.

43, 55 L. T. 362, 11 App. Cases 426); 2 Kent's Commentaries (14th Ed.), p. 351. The uniform sales act expressly exempts from the operation of that act *things in action and money.* 2 Comp. Laws 1929, § 9515.

The contract in question agrees to sell the good will and the dairy business. Personal property is divided into corporeal and incorporeal, tangible and intangible. Plaintiffs, if relegated to an action at law, may not maintain replevin because the good will and the dairy business are not tangible or visible. It may not be felt or touched. It cannot be made the subject of replevin. Replevin will not lie for incorporeal personal property. *Ashton* v. *Heydenfeldt,* 124 Cal. 14 (56 Pac. 624); 54 C. J. p. 421. Plaintiffs may not maintain trover for the good will and dairy business. Trover lies only for tangible property. 65 C. J. p. 18. It will not lie for the good will of a business, *Adkins* v. *Model Laundry Co.,* 92 Cal. App. 575 (268 Pac. 939); nor for a laundry route, *Olschewski* v. *Hudson,* 87 Cal. App. 282 (262 Pac. 43); *Meier* v. *Wilkens,* 15 App. Div. 97 (44 N. Y. Supp. 274.).

If plaintiffs may not maintain an action of replevin to recover the good will and the dairy business and can recover in an action of replevin only the tangible personal property, then plaintiff's remedy is not complete. If plaintiffs may maintain an action for trover or conversion of the tangible personal property, they are still without a remedy for the good will and the dairy business. Their remedy is not complete. If they are relegated to an action of assumpsit, they can maintain an action of assumpsit only against the vendees under the original contract, and, if they recover against them, such vendees may maintain suit in assumpsit against

the assignees of the vendees under the contract. And it is precisely to bring all the parties before the court to settle all this litigation in one suit and afford the plaintiffs a complete and adequate remedy, which they cannot have in a court of law, that the proceeding is instituted in a court of chancery.

In a conditional sales contract, the vendor upon default by the vendee may retake possession of the property or may sue and recover judgment for the purchase price. If he sues for the value of the property, he elects to pass title. *Young* v. *Phillips,* 203 Mich. 566; *Nelson* v. *Viergiver,* 230 Mich. 38; *Uhl* v. *Wexford Co.,* 268 Mich. 473.

"A conditional sale contract may reserve to the seller two inconsistent rights. It may give him the election to sue upon the obligation to pay or to retake possession of the property. He cannot, however, do both. If he elects to retake the property, and does so, he cannot recover any part of the contract price by suit. On the other hand, if he brings suit to recover the debt due him, he cannot thereafter assert his right to retake possession. He cannot recover a judgment for the price while the title to the thing sold yet remains in him." *Nelson* v. *Viergiver, supra.*

The contract here involved is in language analogous to that ordinarily used in a land contract. There is nothing in the contract which expressly retains title to the property sold. It is not in the language ordinarily used in a conditional sale of personal property. It is, however, an agreement to make an absolute sale upon the performance of specified conditions,—the making of payments and the carrying out of the terms of the contract. It gives the vendees possession of the property, provides they shall pay the taxes thereon, that they

shall keep the personal property insured against loss by fire and wind, shall maintain the condition of the property as good as when taken, until paid for. The contract contains an acceleration clause,— upon the making of the payments, the vendors agree to execute a bill of sale to the vendees free from all incumbrances. It provides if the vendees become three months in arrears, then the vendors may declare the full amount unpaid due and payable, may retain what has been paid on the contract, and may take immediate possession of the property. This contract clearly retains the title of the property in the vendors. It gives to the vendors the right to retake possession of the property only after default by the vendees has continued for a period of three months. The contract is similar to that involved in *Young* v. *Phillips,* 202 Mich. 480, 203 Mich. 566, and *Heyman Co.* v. *Buck,* 221 Mich. 225, held to be in the nature of chattel mortgages, and in addition it extends credit to the vendees for three months after default and continues to give to the vendees the right of possession of the property for a period of three months after default. During that period of extended credit after default, the contract stands as security for its own performance.

The contract was not recorded as a chattel mortgage, and a sale to an innocent purchaser for value without notice would be good if the instrument was an unrecorded chattel mortgage. We ought not to presume the assignees of the vendees would sell property which did not belong to them and thus intentionally defraud the purchasers thereof. The presumption is the vendees treated the instrument in question as a chattel mortgage and not as evidencing a conditional sale.

The most striking difference between a chattel mortgage and a conditional sale is that in a chattel mortgage if there is a default in payment there is an equity of redemption which must be foreclosed, while in a conditional sale the condition of payment must be strictly performed, *Weathersly* v. *Weathersly*, 40 Miss. 462 (90 Am. Dec. 344), though such strict performance may be waived by the assignees of the vendors and tender of full payment by the assignees of the vendees before possession taken by the assignees of the vendors would prevent a forfeiture. *Vaughn* v. *McFadyen*, 110 Mich. 234.

Treating the instrument in question as a conditional sale, as contended by defendants, the right of possession in the assignees of the vendees was dependent upon their making payments as provided in the contract, and in the event of default in the making of such payments and demand by the assignees of the vendors such assignees were entitled to recover possession of the property. *Wiggins* v. *Snow*, 89 Mich. 476; *Ryan* v. *Wayson*, 108 Mich. 519; *National Cash Register Co.* v. *Richards*, 159 Mich. 128.

That the contract contains an acceleration clause, or a clause providing the vendees shall keep the property insured, is not sufficient to constitute the contract a chattel mortgage rather than a conditional sale.

"The acceleration clause is not inconsistent with a conditional sales contract. *Galion Iron Works & Manfg. Co.* v. *Service Coal Co.*, 264 Mich. 298. Neither is the provision that the purchaser shall insure. *Federal Commercial & Savings Bank* v. *International Clay Machinery Co.*, 230 Mich. 33 (43 A. L. R. 1245). Nor the taking of promissory notes for the balance of the purchase price. *Federal Commercial & Savings Bank* v. *International Clay Ma-*

*chinery Co., supra; Contractors Equipment Co. v. Reasner,* 242 Mich. 589; *Galion Iron Works & Manfg. Co.* v. *Service Coal Co., supra." Uhl* v. *Wexford Co., supra.*

Plaintiffs did not attempt to take possession of the property or to forfeit defendants' rights thereto. Plaintiffs elected to begin suit to foreclose the contract and to recover deficiency in case one should arise. Treating the instrument as a conditional sale, plaintiffs by commencing suit elected to waive title to the property and are restricted to the recovery of a money decree against defendants.

Decree reversed, with costs, and case remanded to the trial court for further proceedings.

FEAD, C. J., and BUTZEL, BUSHNELL, and CHANDLER, JJ., concurred with POTTER, J.

NORTH and WIEST, JJ., concurred in the result.

SHARPE, J. (*dissenting*). The plaintiffs are owners of the vendors' interest in a contract for the sale of a milk route and equipment in the city of Charlotte and the defendants Smith are the present owners of the vendees' interest. The contract was entered into on October 28, 1929, the consideration of which was the sum of $6,007.62; and on November 8, 1935, at which time the last payment was made, the balance due on the contract was $974.24. The material parts of the contract entered into are as follows:

"Said second parties hereby agree to pay to first party the sum of $6,007.62 as follows:

"Fifteen hundred paid this day the receipt of which is hereby acknowledged, and the balance as follows: $50 December 1, 1929, and $50 on the first day of each and every month thereafter until paid with interest at the rate of seven per cent. per an-

num, payable monthly out of each monthly payment of $50, interest to be first deducted and the balance applied on the principal.

"Said second parties agree to pay all taxes that shall be assessed against said property until said purchase price is fully paid.

"Said second parties shall keep the said personal property insured against loss by fire and wind in amount approved by first parties and assign and transfer said policies to said second parties.

"Said first parties on receiving payment in full as above set forth shall make, execute and deliver to second parties a bill of sale of said property free and clear from any and all incumbrance except those that may have accrued through any acts or neglect of second parties heretofore subsequent to this date. * * *

"If the said parties of the second part shall fail to perform this contract for the covenants or agreements or the payments shall become three months in arrears, said first parties shall have the right to declare the full amount unpaid due and payable and shall have the right to retain what may have been paid on said contract, and may take immediate possession of said property."

In November, 1935, plaintiffs filed a bill of complaint to have the property sold under the direction of the court, the proceeds applied to the obligation, and a decree against the defendants for the deficiency if there should be any. The defendants filed a motion to have the action dismissed on the ground that plaintiff had an adequate remedy at law. The trial court held that the contract was a conditional sales contract and entered an order transferring the cause from the chancery to the law side of the court.

Plaintiffs appeal and contend that the contract entered into was a chattel mortgage; that if the in-

strument in question was a conditional sales contract, it could be foreclosed in a chancery court and equitable relief should be granted because of the general uncertainty and inadequacy of the legal remedy.

The test of the nature of the instrument was laid down in *Atkinson* v. *Japink,* 186 Mich. 335, and has been frequently followed and applied. (1) If the vendor has the right to reclaim the chattel without losing his action for the purchase price, the instrument is a chattel mortgage; (2) If the right to reclaim the chattel and the right to the purchase price are mutually exclusive, the instrument is a true conditional sales agreement.

A chattel mortgage must be recorded; unrecorded chattel mortgages are invalid as against subsequent creditors and *bona fide* purchasers of the mortgagor. The vendor may sue for the purchase price without losing his lien; or he may foreclose the mortgage and take a deficiency. In event of foreclosure the payments which have been made must be applied upon the purchase price to reduce the amount of the deficiency. A true conditional sales agreement need not be recorded, the vendor having an absolute title prevails against all subsequent parties. If the vendor repossesses the property, he thereby forfeits any claim to the balance of the purchase price and payments made may be retained if the contract provides that they are for rental, costs, etc.; or if the vendor sues for the balance due on the purchase price, title to the goods passes to the vendee.

In *Mills Novelty Co.* v. *Morett,* 266 Mich. 451, 457, we said:

"The determination of the nature of the transaction (at least where rights of third persons are not involved) depends upon the intention of the parties

making the contract under consideration, as ascertained by the correct construction of its terms. If the intent is not clear, ambiguities will be solved against the party who was relied upon to, and who did, select the language of the contract.''

The instrument in issue contains an acceleration clause, but as was said in *Galion Iron Works & Manfg. Co.* v. *Service Coal Co.,* 264 Mich. 298, such a clause is not a controlling feature one way or the other. The instrument in question has no affidavit attached as is required by statute upon a chattel mortgage, it provides for a bill of sale upon completion of all payments; it does not specifically provide that the vendor may declare the contract in default, recover the goods and sue for a deficiency. In our opinion the instrument is a conditional sales contract.

Upon default, in a conditional sales contract, the vendor may sue for the balance of the purchase price and convey the property, or he may repossess the property without accounting to the purchaser; if he adopts the first alternative he may sue in assumpsit, or if repossession seems desirable he may replevin the property. In either action the law side of the court provides an adequate remedy. The uncollectibility of any or all defendants does not change the rights or remedies of the parties.

The decree of the trial court should be affirmed. Defendants should recover costs.