LAFRANCE-REPUBLIC SALES CORP. *v.* NORTON.

1. EQUITY — REFORMATION OF INSTRUMENTS — JURISDICTION — FORE-
   CLOSURE OF CHATTEL MORTGAGE.
   
   Retention of jurisdiction by court of equity to foreclose a chattel mortgage *held,* proper where plaintiff was entitled to reformation on ground of mutual mistake of parties thereto when renewal notes were executed reciting they were secured by a chattel mortgage which was never executed.

2. CHATTEL MORTGAGES — FORECLOSURE — BREACH OF WARRANTY —
   FINDING OF COURT—TRUCKS.
    In suit to foreclose chattel mortgage, originally securing 12 notes,
   on four trucks, used by contractor in road construction work,
   in which defense interposed was breach of warranty to per-
   form work for which purchased, finding of trial court for
   plaintiff *held*, sustained by record showing replacement of
   motors and rear axles, removal of some notes, payment of some
   renewals, and absence of complaint when pressed for payment.

Appeal from Gratiot; Searl (Kelly S.), J.  Sub-
mitted October 5, 1937.  (Docket No. 24, Calendar
No. 39,647.)  Decided December 14, 1937.

Bill by LaFrance-Republic Sales Corporation, a
Delaware corporation, against Daniel L. Norton for
foreclosure of a chattel mortgage and a money de-
cree.  Decree for plaintiff.  Defendant appeals.
Affirmed.

*Charles H. Goggin* and *Robert H. Baker,* for plain-
tiff.

*Montigel & Knorr (Carl O. Bay* and *J. David Sul-
livan,* of counsel), for defendant.

NORTH, J.  In this suit in chancery plaintiff seeks
to foreclose a chattel mortgage.  This mortgage was
given July 13, 1932, by defendant to the LaFrance-
Republic-Linn Sales of St. Paul, Minnesota, an as-
sumed name under which one C. W. McElroy was
doing business.  On July 25, 1932, the mortgage and
accompanying notes were assigned and transferred
for value to the plaintiff herein.  Other pertinent
facts are hereinafter stated.  Plaintiff had a decree
of foreclosure and defendant has appealed.

In July, 1932, defendant Norton purchased from
C. W. McElroy four motor trucks to be used in Nor-

ton's business as a highway construction contractor. A down payment of $2,400 was made and for the balance of the purchase price, amounting to $4,800, 12 notes were given, each in the amount of $400, the first note maturing on the 15th of August, 1932, and one note of the series maturing on the 15th of each month thereafter. Payment of these notes was secured by a chattel mortgage on the four trucks purchased. Notwithstanding these trucks were so-called "contractor's special" and guaranteed to stand up under the work for which they were purchased, the testimony shows it at once developed that the trucks were not suited for the performance of defendant's work. The radiators were too small and defendant claims this resulted in the motors overheating and being damaged. Also the rear axles, including the differential gears, proved inadequate for the heavy service required by defendant. Because of repeated breakdowns the use which defendant otherwise would have had of the trucks was frequently interrupted, the work delayed and loss sustained by defendant. As a result of complaints made by defendant to McElroy the radiators and motors were replaced and a number of rear axles and differential gears supplied to defendant. With the exception of paying for one set of gears, these parts were replaced without charge to defendant except cost of transportation and some expense of installing. In the meantime defendant had fallen in arrears in the payment of the chattel mortgage notes as they fell due. Three of the original series were paid. On July 5, 1933, a new series of notes in lieu of the nine that were unpaid, was given by defendant. The old notes were surrendered. Each of the new notes was in the sum of $400, one maturing each month beginning August 5, 1933. It is plaintiff's claim that this new series of

notes was given as the result of an agreement which was fully performed on the part of the LaFrance-Republic Sales Corporation. This agreement provided.for the replacement of the motor in each of the four trucks, and also for the replacement of the rear axles. Subsequently two of this later series of nine notes were paid, one on September 15 and one October 15, 1933. The present suit is for the collection of the remaining seven notes by way of foreclosure of the chattel mortgage.

Defendant challenges the right of plaintiff to foreclose its chattel mortgage by a bill in equity; it being defendant's claim that plaintiff has a complete and adequate remedy at law. Aside from asserting that the optional remedy of foreclosure in chancery exists in this jurisdiction, plaintiff contends that the bill was properly filed on the ground that incident to the mortgage sought to be foreclosed there had been a mutual mistake, and that since this phase of the litigation would give equity jurisdiction, such jurisdiction would be retained for the adjudication of all matters in controversy.

The mutual mistake relied upon by plaintiff, and a circumstance in consequence of which it claims it could not safely proceed to foreclose its chattel mortgage in the usual manner, is that each of this second series of notes contains the following recital:

"This note is one of a series of 10 notes (9 notes in fact) referred to in conditional sales agreement, chattel mortgage, or lease agreement, dated *July 5, 1933,* executed by the maker hereof covering LaFrance-Republic motor vehicle No. 320077, 320078, 320079 and 320080."

It is plaintiff's claim that at the time of taking the new series of notes it was contemplated a new chattel

mortgage would be given, but through some over-sight, inattention or mistake, such a new mortgage was not in fact executed by defendant, although it appears from the record that one was prepared. Obviously the recital contained in each of the notes that it was secured by a chattel mortgage "dated July 5, 1933," did not conform to the fact. Instead the only chattel mortgage held by plaintiff was the original mortgage given in July, 1932, to secure payment of the original series of 12 notes. Defendant denies that it was understood or agreed that a new mortgage should be given; but instead asserts it was his understanding that the original mortgage continued in force and effect. But clearly the recitals in the new series notes indicated that the giving of a new mortgage was contemplated. The nature of this transaction, as well as the recitals in the new notes, convincingly indicates that the parties contemplated the continuation of the chattel mortgage security either by giving a new mortgage or continuing the first mortage as security for the new notes; and the failure to do either resulted from a mutual mistake. We think the circuit judge was correct in holding, apparently on the ground of mutual mistake, plaintiff was equitably entitled to reformation and therefore the chancery court had jurisdiction. In his opinion the circuit judge said:

"Under the facts set up in the bill and the general prayer for relief plaintiff had the right to a decree determining that the renewal notes were secured by the original mortgage and, in order to prevent a multiplicity of suits, it was entitled to have a decree establishing the liability of defendant for a deficiency. This could all be done in equity in one case. At law it could have been done only in two cases. At the time the bill was filed plaintiff could not know

what defense the defendant would make, nor whether he would claim that because of the recital in the notes of a mortgage not in existence that therefore the notes were delivered under some arrangement by which no security was to be left on the trucks. I therefore hold that the bill was properly filed in equity and that the court has jurisdiction.''

For a somewhat similar case as to reasons for sustaining jurisdiction in equity, see *Powers* v. *Fisher,* 279 Mich. 442.

The remaining question for review is whether on the merits of this case as disclosed by the record plaintiff was entitled to a decree which required defendant to pay plaintiff $3,478.35 and costs of suit and that in default thereof plaintiff should have foreclosure of the chattel mortgage. While defendant did not file a cross-bill, he did include in his answer affirmative allegations from which his claim appears that by reason of defects in the trucks purchased and their failure to perform the work which they were warranted to perform, he sustained loss in the sum of $5,000. Further it is alleged in defendant's answer that at the time the series of new notes was given it was understood and agreed between defendant and McElroy, that not only the motors but the rear axles would be replaced by heavier equipment; and while it is admitted that new motors were installed in the trucks defendant alleges that the rear axles or rear end assemblies were not furnished as agreed, that in consequence thereof the trucks were unusable, and he should not be decreed liable on the chattel mortgage or notes. This affirmative matter set up in defendant's answer was denied in a reply made by plaintiff.

An issue of fact was squarely presented; and under the testimony this issue was decided by the trial

judge adversely to defendant, whose deposition was presented at the hearing. We quote from the judge's opinion:

"The defendant Norton in his deposition testifies that after the meeting in Ontonagon (May 21, 1933) four new motors for the trucks were sent and that he paid the freight as agreed and that the motors were installed and that he signed the renewal notes and was given the old notes in return. He undertakes to deny that the rear ends were furnished, but he is mistaken about that, as I am satisfied from the testimony of the others present at the Ontonagon meeting that those axles were then in the garage of defendant at Ontonagon. Norton testifies that he did make complaint about the trucks to McElroy over the phone at various times after the new notes were given (July 5, 1933), but he does not state any dates, and his testimony in that regard is so uncertain and incomplete and uncorroborated that it cannot stand up against the positive testimony of McElroy to the contrary.

"Under well-settled principles of law, defendant, having kept the trucks and the axles and motors as finally furnished to him from the time of the giving of the new notes up to the time of the commencement of this case in June, 1934, nearly a year, without any complaint that the same were not satisfactory, and having in the meantime paid one (two) of the notes and repeatedly promised in writing to pay the others, making no complaint in said writing that difficulties in regard to the trucks had not been satisfactorily adjusted, cannot now make the defense attempted by him."

The record sustains the foregoing conclusion of the trial judge. Prior to the giving of the new series of notes which are involved in this suit the parties had met and agreed upon what was to be done to adjust their differences. The claim of defendant that

this agreement was not fully performed is hereinbefore set forth. The testimony is in conflict. Among other matters disclosed by the record tending strongly to sustain the trial judge's conclusion are the following: After the agreement was entered into with defendant to furnish new motors and rear axles the new series of notes was given, and still later, after defendant had full knowledge of all the material facts and circumstances involved in this suit, two of these notes were paid. One was paid September 15, 1933, and one October 15, 1933. Three letters appear in the record which were subsequently written by defendant to McElroy. One of these letters was dated December 12, 1933, one January 4, 1934, and another January 31, 1934. Without quoting them in detail it is sufficient to note that in each of these letters defendant promised to pay his outstanding notes, but gives as his reason for present inability to do so that the State was withholding payment of money due defendant. In none of these letters is there a word of complaint along the line of Norton's defense to the present suit. We must conclude that the finding of the circuit judge is sustained by the record and plaintiff is entitled to the decree entered in the circuit court. It is affirmed, with costs to appellee.

FEAD, C. J., and WIEST, BUTZEL, BUSHNELL, SHARPE, POTTER, and CHANDLER, JJ., concurred.