MARKMAN, J.
This case presents a relatively narrow question, one that is accessible to both the lay and legal reader: whether a husband who has abandoned his wife for the final 18 months of her life while she was battling cancer, who had no personal contact with her during this period, and who did not even attend her funeral, should have to contribute his share of the mortgage, tax, and insurance payments that the wife alone paid during her final months on real properties that they owned together. In legal terms, the question becomes whether the doctrine of contribution can be applied between co-tenants in a tenancy by the entirety where one spouse has willfully abandoned the other before that spouse’s death and, thus, is not a “surviving spouse.” See MCL 700.2801(2)(e)(i). In either iteration of the question before this Court, the core issue is the same, and the inequities in this case are inescapable. Accordingly, the resolution of this case turns exclusively on whether the firmly established doctrine of contribution can be appropriately applied on these facts. Be *41 cause there is no adequate remedy at law for the harm plaintiff alleges, because no other governing legal or equitable principle precludes this remedy, and because the relief plaintiff seeks — when properly understood— will not upset the common law of this state, we conclude that the equitable doctrine of contribution can be appropriately applied in this context. Therefore, we reverse the judgment of the Court of Appeals and remand to the probate court for proceedings not inconsistent with this opinion.
I. PACTS AND HISTORY
Janet and Frank Mandeville were married in 1975 and remained so until Janet died on July 13, 2002, after a battle with breast cancer. The Mandevilles acquired two properties during their marriage. In 1984, they acquired a marital residence in Macomb County, and, in 1987, they acquired a parcel of property in Ogemaw County. They owned both properties as tenants by the entirety. Accordingly, by the right of survivorship inherent in a tenancy by the entirety, the marital real properties passed to Frank upon Janet’s death. Without question, he now owns them in fee simple absolute.
In the last decade of their marriage, Frank Mandeville was often out of the country for extended periods. Specifically, he was absent for the 18 months preceding Janet’s death. During this period, Frank did not attempt to call Janet or otherwise communicate with her, even though, as he acknowledged, he knew that she was seriously ill. He did not attend her funeral. In Frank’s absence, Janet maintained the properties and was responsible for paying the taxes, insurance, and mortgage. In Frank’s absence, Janet was cared for by her sister, Susan Tkachik.
*42 In the months before she died, Janet executed a living trust and final will that disinherited her husband and left everything to her mother, Wanda Tkachik. Janet’s will stated: “It is my specific intent to give nothing to my husband under this Trust Agreement. If I am survived by my husband, for the purposes of this Trust Agreement, he will be deemed to have predeceased me.” In addition, the will named Susan Tkachik (hereafter Tkachik) the personal representative of the estate. Tkachik now brings this action in that capacity. Moreover, consistent with Janet’s unequivocal intent to disinherit her husband in her will, before she died, Janet also transferred her retirement benefits so that they would not pass to Frank, and she unsuccessfully attempted to defeat the right of survivorship by transferring her interest in the marital properties by quitclaim deed.
Several months after Janet’s death, Frank Mandeville filed a petition for probate as well as a complaint seeking to set aside Janet’s will and trust. Tkachik, acting as the personal representative of her deceased sister’s estate, moved for summary disposition, arguing that Frank Mandeville should not be considered a surviving spouse because he had been willfully absent from the marriage for more than a year. [1] Applying the clear language of MCL 700.2801(2), the probate court *43 ruled that Frank Mandeville was not a “surviving spouse” and granted plaintiffs motion in October 2003.
In November 2003, Tkachik filed suit on behalf of the estate in probate court to effectuate her sister’s intent to disinherit Frank Mandeville completely. Plaintiff sought a determination that, because defendant was not a “surviving spouse,” the Mandevilles should be considered tenants in common with regard to their real properties and defendant should not obtain fee ownership of the properties. The probate court denied plaintiffs request, reasoning that the surviving spouse statute is limited in its application and does not destroy a tenancy by the entirety. Therefore, it properly held that upon Janet’s death, fee-simple title to the properties had vested in defendant.
Plaintiff amended her complaint to seek contribution from defendant for the monetary expenses Janet incurred in maintaining the properties before her death. The probate court granted defendant’s motion for summary disposition on the estate’s contribution claim. Plaintiff filed a delayed application for leave to appeal in the Court of Appeals, which was denied for lack of merit in the grounds presented. Tkachik v Mandeville, unpublished order of the Court of Appeals, entered November 16, 2006 (Docket No. 270253). Initially, plaintiffs application for leave to appeal in this Court was also denied. Tkachik v Mandeville, 477 Mich 1057 (2007). However, this Court granted plaintiffs motion for reconsideration, and, on reconsideration and in lieu of granting leave to appeal, remanded the case to the *44 Court of Appeals as on leave granted to consider “whether a contribution claim against the defendant, based on an unjust enrichment theory, is appropriate under the facts of the case.” Tkachik v Mandeville, 480 Mich 898 (2007).[2]
On remand, the Court of Appeals affirmed the probate court’s decision. Tkachik v Mandeville, 282 Mich App 364, 366; 764 NW2d 318 (2009). The panel reasoned that defendant had not been unjustly enriched because he had only received “that which was given to him by operation of law, without any obligation . . . .” Id. at 372. Moreover, the panel emphasized the fact that Janet was deceased, and stated that it could not enter a “posthumous divorce” based on “perceived inequities” because “Michigan law does not recognize such an action.” Id. at 373, 378. Plaintiff again appealed in this Court. We granted plaintiffs application for leave to appeal, directing the parties to address the following issue:
[W]hether, when a husband has abandoned his wife for the year and a half preceding her death, and the wife alone has made mortgage, tax, and insurance payments on property held as tenants by the entirety, the wife (or her estate) may receive contribution for the husband’s share of these payments. [Tkachik v Mandeville, 485 Mich 853 (2009).]
II. STANDARD OF REVIEW
Plaintiffs claim sounds in equity, and requires this Court to consider whether the common law doctrine of contribution is appropriately applied in this context. We hear and consider equity cases de novo on the record on *45 appeal. Biske v City of Troy, 381 Mich 611, 613; 166 NW2d 453 (1969). The interpretation and applicability of a common-law doctrine is also a question that is reviewed de novo. James v Alberts, 464 Mich 12, 14; 626 NW2d 158 (2001). “ ‘[T]he granting of equitable relief is ordinarily a matter of grace, and whether a court of equity will exercise its jurisdiction, and the propriety of affording equitable relief, rests in the sound discretion of the court, to be exercised according to the circumstances and exigencies of each particular case.’ ” Youngs v West, 317 Mich 538, 545; 27 NW2d 88 (1947) (citation omitted).
III. ANALYSIS
Plaintiff asks this Court to exercise its equitable powers. Therefore, this case requires an understanding of the principles that guide this Court in determining whether to provide equitable relief, a determination that, in this case, also requires consideration of the law governing tenancy by the entirety, the doctrine of contribution, and claims for unjust enrichment.
A. EQUITABLE PRINCIPLES
In its sound discretion, this Court may grant equitable relief “[w]here a legal remedy is not available[.]” Powers v Fisher, 279 Mich 442, 448; 272 NW 737 (1937). “A remedy at law, in order to preclude a suit in equity, must be complete and ample, and not doubtful and uncertain. .. .” Edsell v Briggs, 20 Mich 429, 433 (1870). Furthermore, to preclude a suit in equity, a remedy at law, “both in respect to its final relief and its modes of obtaining the relief, must be as effectual as the remedy which equity would confer under the circumstances ....” Powers, 279 Mich at 447, citing 1 Pomeroy, Equity Jurisprudence (3d ed), § 280. Equity jurispru *46 dence “ ‘mold[s] its decrees to do justice amid all the vicissitudes and intricacies of life.’ ” Spoon-Shacket Co, Inc v Oakland Co, 356 Mich 151, 163; 97 NW2d 25 (1959) (citation omitted). While legislative action that provides an adequate remedy by statute precludes equitable relief, the absence of such action does not. This is so because “[e]very equitable right or interest derives not from a declaration of substantive law, but from the broad and flexible jurisdiction of courts of equity to afford remedial relief, where justice and good conscience so dictate.” 30A CJS, Equity, § 93, at 289 (1992). Equity allows “complete justice” to be done in a case by “adapting] its judgment^] to the special circumstances of the case.” 27A Am Jur 2d, Equity, § 2, at 520-521.
B. TENANCY BY THE ENTIRETY
A tenancy by the entirety is a type of concurrent ownership in real property that is unique to married persons. Field v Steiner, 250 Mich 469, 477; 231 NW 109 (1930). In Long v Earle, 277 Mich 505, 517; 269 NW 577 (1936), this Court explained that a defining incident of this tenancy under Michigan law is “that one tenant by the entirety has no interest separable from that of the other” and “has nothing to convey or mortgage or to which he alone can attach a lien.” Thus, when title to real estate is vested in a husband and wife by the entirety, separate alienation by one spouse only is barred. Id. Furthermore, MCL 557.71 states, “a husband and wife shall be equally entitled to the rents, products, income, or profits, and to the control and management of real or personal property held by them as tenants by the entirety.”
In addition to these rights, both spouses have a right of survivorship, meaning that, in the event that one spouse dies, the remaining spouse automatically owns *47 the entire property. MCL 700.2901(2)(g); Rogers v Rogers, 136 Mich App 125, 134; 356 NW2d 288 (1984). Thus, entireties properties are not part of a decedent spouse’s estate, and the law of descent and distribution does not apply to property passing to the survivor. Id. at 134-135.
C. CONTRIBUTION AND UNJUST ENRICHMENT
Contribution is an equitable remedy based on principles of natural justice. Lorimer v Julius Knack Coal Co, 246 Mich 214, 217; 224 NW 362 (1929). In Caldwell v Fox, 394 Mich 401, 417; 231 NW2d 46 (1975), this Court explained:
The general rule of contribution is that one who is compelled to pay or satisfy the whole or to bear more than his aliquot share of the common burden or obligation, upon which several persons are equally liable or which they are bound to discharge, is entitled to contribution against the others to obtain from them payment of their respective shares. [Emphasis added.]
This Court has applied the doctrine of contribution between co-contractors. Comstock v Potter, 191 Mich 629, 637; 158 NW 102 (1916) (“[O]ne who has paid more than his share of the joint obligation may recover contribution from his co-contractors.”). And, in Strohm v Koepke, 352 Mich 659, 662-663; 90 NW2d 495 (1958), this Court recognized the right of equitable contribution for tenants in common. Strohm grounded a co-tenant’s right to contribution “upon purely equitable considerations,” explaining that “[i]t is premised upon the simple proposition that equality is equity.” Id. at 662.
Plaintiff predicates her claim for contribution on a theory of unjust enrichment. Unjust enrichment is defined as the unjust retention of “ ‘money or benefits *48 which in justice and equity belong to another.’ ” McCreary v Shields, 333 Mich 290, 294; 52 NW2d 853 (1952) (citation omitted). “No person is unjustly enriched unless the retention of the benefit would be unjust.” Buell v Orion State Bank, 327 Mich 43, 56; 41 NW2d 472 (1950). Buell also explained: “ ‘One is not unjustly enriched... by retaining benefits involuntarily acquired which law and equity give him absolutely without any obligation on his part to make restitution.’ ” Id. (citation omitted).
D. APPLICATION
In this case, we must determine: (a) whether defendant was unjustly enriched; and, if so, (b) whether the doctrine of contribution can be appropriately applied in these circumstances to prevent his unjust enrichment. After carefully considering the governing legal and equitable principles, and after meaningfully engaging with “ ‘the circumstances and exigencies of [this] particular case,’ ” as equity requires, Youngs, 317 Mich at 545 (citation omitted), we answer both questions in the affirmative.
1. UNJUST ENRICHMENT
Defendant argues, and the Court of Appeals and the dissents in this Court agree, that he has not been unjustly enriched because he “has only received that which was given to him by operation of law, without any obligation ....” Tkachik, 282 Mich App at 372. In support of this conclusion, the Court of Appeals relied on Buell for the proposition that there can be no unjust enrichment where a person comes into ownership of property that “ ‘law and equity give him absolutely without any obligation on his part to make restitution.’ ” Buell, 327 Mich at 56 (citation omitted). There are significant legal and *49 factual flaws in this argument, which we herein reject. As a threshold matter, this conclusion is based on a misreading of Buell, the primary authority offered in support of the conclusion that defendant has not been unjustly enriched. The Court of Appeals and the dissents fail to note what is most obvious in Buell, namely, that its limitation on a finding of unjust enrichment requires the consideration of both legal and equitable factors. Thus, even though by operation of law defendant received the property “absolutely,” he is still unjustly enriched if he is obligated by equity to make restitution. Id. Therefore, Buell does not preclude a finding that defendant was unjustly enriched. Rather, its rule plainly states exactly the contrary — that a defendant may be held to have been unjustly enriched if equity demands that he make restitution.
On the facts of this case, we conclude that equity, and the principles of natural justice embodied therein, call on defendant Frank Mandeville to contribute his share of the property maintenance costs incurred by his wife Janet Mandeville, who bore these obligations alone in the 18 months before her death. While defendant was willfully absent from the marriage, and from the marital properties, Janet maintained the properties and incurred all the necessary expenses. In light of these facts, the Court of Appeals’ and the dissents’ conclusion that defendant received the properties “without any obligation” is an oversimplification that is at odds with the realities of this case. Significantly, this conclusion does not account for what would have happened to the properties had Janet not made the mortgage, tax, and insurance payments. Janet made those payments to preserve the undivided interest in the properties that she and her husband shared. Failure to make these mortgage and tax payments would have resulted in the loss of the properties to foreclosure. Simply put, but for *50 Janet’s payments, there would he no property to pass to defendant by operation of law.[3] Considering this reality, we are unable to conclude that defendant received the properties “ ‘without any obligation on his part to make restitution.’ ” Buell, 327 Mich at 56 (citation omitted).
The Court of Appeals’ and the dissents’ contrary conclusion is also based on a misunderstanding concerning the relief plaintiff requests. The Court of Appeals determined that a finding of unjust enrichment “would subvert the protective purpose of the tenancy by the entirety, as it would permit the state to pierce the marital relationship and divide property contrary to how the parties chose to hold the property.” Tkachik, 282 Mich App at 376. The flaw in this argument is that plaintiff is not seeking to divide marital real property, and the relief she actually seeks will not “subvert” or in any other way affect the law of tenancies by the entirety. Indeed, plaintiff is legally incompetent to divide or alter defendant’s interest in the marital properties because, as the parties acknowledge, defendant already owns the properties in fee simple absolute, as they passed to him solely and absolutely upon Janet’s death. [4] What plaintiff is seeking as the personal representative of Janet’s estate is contribution for the past monetary expenses that Janet incurred in maintaining *51 the marital properties while defendant was willfully absent from Janet and the properties. Thus, the fact that the properties undisputedly passed to defendant automatically by operation of law does not defeat a finding that defendant was unjustly enriched or bar a claim for contribution. As the facts here illustrate, permitting a contribution claim in these circumstances will not interfere with well-settled principles governing property held in a tenancy by the entirety and specifically will not affect the unencumbered right of survivorship.[5] Janet and Frank Mandeville held their properties as tenants by the entirety; upon Janet’s death, such properties passed to Frank solely and absolutely, at which point he owned them in fee simple absolute. The law of tenancy by the entirety, and specifically the right of survivorship, has already been given full effect in this case, a result that is unaltered when Frank is required to pay contribution to plaintiff for past monetary expenses.[6]
*52 In sum, when the applicable law is understood, and the specific circumstances of this case are evaluated in the context of a contribution claim, we conclude that defendant has been unjustly enriched by his retention of “ ‘money or benefits which in justice and equity belong to another.’ ” McCreary, 333 Mich at 294 (citation omitted). Defendant owns the marital properties only because of Janet’s maintenance payments. Considering his willful abandonment of Janet, by which she alone became responsible for the properties, for defendant to retain the monies that preserved these properties and made his ownership possible would be unjust.
2. ADEQUATE REMEDY
The next consideration is whether the doctrine of contribution can be appropriately applied in these circumstances to prevent defendant’s unjust enrichment. In making this determination, the first question to be addressed is whether there is an adequate legal remedy that precludes this Court from providing equitable relief. Powers, 279 Mich at 447. We conclude that there is not. Although Justice YOUNG claims that “[h]ere, Janet Mandeville had several available remedies that *53 she declined to pursue,” specifically arguing that Janet could have filed for divorce or separate maintenance, post at 82, one simply does not need to think too long or too hard about the legal remedies of divorce or separate maintenance to realize that they are entirely inadequate for several reasons. First, divorce, and by extension separate maintenance, is an inappropriate remedy for many people, especially those for whom divorce is religiously or morally objectionable.[7] Second, divorce is a disproportionate remedy when compared to the relief actually sought — contribution for the past monetary expenses that Janet incurred in maintaining the properties.[8]
The Court of Appeals and dissents disagree. They fault Janet for not taking legal steps to dissolve her marriage and accuse plaintiff of attempting to create a “ ‘de facto’ ” divorce that would “distribute jointly held property” in the absence of such action. Tkachik, 282 Mich App at 373. However, this criticism is based on a persistent misunderstanding about plaintiffs claim for *54 contribution. As stated, plaintiffs contribution claim will not divide the marital real properties that defendant undisputedly owns in fee simple absolute.
Thus, the remedy of divorce, which would have both dissolved the Mandevilles’ bonds of marriage and necessitated a division of real property, does not constitute an adequate remedy at law for the actual, and relatively narrow, relief sought by plaintiff. As this Court has made clear,
[t]he fact that there is a legal remedy is not the criterion. That legal remedy, both in respect to its final relief and its modes of obtaining the relief, must be as effectual as the remedy which equity would confer under the circumstances .... [Powers, 279 Mich at 447.]
Because the “final relief” granted in divorce— dissolution of the marital bonds and division of marital property — is hardly as “effectual” as contribution in recouping the limited monetary payments at issue, we do not believe that plaintiffs claim must fail because, for whatever reason, Janet did not pursue this action in life.[9] Divorce would have been a hugely blunderbuss *55 “remedy” in view of what plaintiff here is actually seeking, and could only be viewed as equivalently “effectual” if a surgical amputation of a toe could be viewed as equivalently “effectual” to a podiatrist appointment as a remedy for an ingrown toenail.
In addition, we do not think that plaintiffs claim is precluded by the equitable maxim that “ ‘[e]quity will not assist a [person] whose condition is attributable only to that want of diligence which may be fairly expected from a reasonable person.’ ” Powers v Indiana & Mich Electric Co, 252 Mich 585, 588; 233 NW 424 (1930) (citation omitted). To find that Janet was somehow derelict in her legal responsibilities because she should have done more would be both inaccurate and more than a little unfair. First, Janet took significant steps in preparation for her death to make clear her intentions that her husband not receive property when she died. She unequivocally disinherited Frank in her will; she transferred her retirement benefits so that they would not pass to him; and she undertook specific efforts to divest him of his interest in the marital real properties before she died. Second, it should be remembered that she undertook these efforts as she was preparing for death, receiving treatment for breast cancer, and preserving and maintaining the two properties at issue by herself. As plaintiffs counsel explained at oral argument: “[Janet] did everything possible, including transferring her ERISA benefits, and *56 her real property, and her estate property, all three buckets of property, to prevent them from going to her husband at the time — and unfortunately she passed before she could take that next step whatever that next step might have been for her.” In light of the hard realities in this case, we do not think that Janet was derelict in these circumstances for not doing more in pursuance of her legal responsibilities.[10]
3. CONTRIBUTION AND TENANCY BY THE ENTIRETY
Because divorce and separate maintenance are inappropriate, disproportionate, and ineffectual remedies, an equitable remedy is necessary because there is no adequate remedy at law. Powers, 279 Mich at 447. Accordingly, defendant should be liable on a contribution theory for the payments Janet made in excess of her “aliquot share of the common burden or obligation ....” Caldwell, 394 Mich at 417. Although in Strohm this Court recognized the application of contribution between co-tenants in common, the question whether contribution can be applied between co-tenants by the entirety is one of first impression in this state. Established equitable principles guide this Court in determining whether the doctrine of *57 contribution should be extended. We are particularly mindful that the Court’s equitable powers are “ ‘to be exercised according to the circumstances and exigencies of each particular case.’ ” Youngs, 317 Mich at 545 (citation omitted).
On these facts, we conclude that the firmly established doctrine of contribution can be appropriately applied between tenants by the entirety and, therefore, we will permit plaintiffs claim for contribution. Equity allows “complete justice” to be done by “adapting] its judgment^] to the special circumstances of the case.” 27A Am Jur 2d, Equity, § 2, at 520-521 (1996). Our consideration of the “special circumstances” of this case leads us to conclude that the following facts are legally sufficient to permit a claim for contribution between tenants by the entirety: (a) where the decedent spouse has taken sole responsibility for the property maintenance payments while the other spouse had absolutely no personal contact with her for at least the last 18 months of her life; (b) where the other spouse did not attempt once to communicate with the decedent spouse during this time, even though he acknowledged that he was aware that she was battling cancer; (c) where the other spouse was disinherited in the decedent spouse’s will; (d) where the decedent spouse sought diligently, albeit unsuccessfully, to divest the other spouse of his interest in the real properties before she died; and (e) where the other spouse was deemed a non-surviving spouse under MCL 700.2801(2)(e)(i). These unusual facts cry out for equitable relief so that “complete justice” can be done and give us assurance that in granting plaintiffs remedy we are exercising our discretion carefully and responsibly.[11]
*58 Defendant, the Court of Appeals, and Justice Young’s dissent raise several arguments in opposition to our determination that the doctrine of contribution can be applied appropriately in this case. Their arguments, however, do not consider equity’s guiding principles, but rather are grounded on flawed legal analysis and unwarranted policy concerns. First, Justice Young’s dissent claims that the surviving spouse provision bars the relief plaintiff requests because, in its view, plaintiff is asking this Court to extend the provision in contradiction of its express limitations. We fail to see how granting plaintiffs equitable claim would impermissibly “extend” MCL 700.2801, when this Court is neither interpreting this provision nor acting in pursuance of its authority.[12] Rather, our power to grant equitable relief derives, not from this provision, but from this Court’s inherent authority to do equity where no ad *59 equate remedy at law exists. Indeed, contribution is available to plaintiff precisely because neither the Estates and Protected Individuals Code nor any other statute provides, or precludes, the remedy that plaintiff seeks. Thus, the fact that MCL 700.2801 is silent with respect to contribution can hardly be said to defeat plaintiffs claim. Justice Young’s contrary position, under which this Court may not grant plaintiff relief because the Legislature did not specify this remedy in the surviving spouse provision, ignores a basic tenet of our jurisprudence: courts possess an inherent power to afford equitable remedies. These do not derive from any “declaration of substantive law, but from the broad and flexible jurisdiction of courts of equity to afford remedial relief where justice and good conscience so dictate.” 30A CJS, Equity, § 93, at 289 (1992).[13]
Second, the Court of Appeals below and Justice Young’s dissent distinguish and dismiss as unpersua *60 sive decisions from other jurisdictions that permit a claim for contribution between tenants by the entirety, and, thus, lend support to plaintiffs claim in the instant case. See, e.g., Crawford, 293 Md 307; Turner, 147 Md App 350; Cagan, 56 Misc 2d 1045. Each of these out-of-state cases ruled that the ordinary presumption that a spouse’s payments toward real property are considered a gift to the other spouse is inapplicable where the spouses are not living together as husband and wife. Crawford, 293 Md at 311; Turner, 147 Md App at 407; Cagan, 56 Misc 2d at 1049-1050. And therefore, each of these courts recognized that the doctrine of contribution may be applicable between tenants by the entirety.
Justice Young’s dissent distinguishes these cases because, in its view, “[t]he common thread among these cases is that the plaintiffs were able to overcome — in live divorce proceedings that sought to partition marital property — the presumption that money expended by one party to the divorce to maintain a concurrent estate was not a gift to his or her spouse.” Post at 89-90 (emphasis in original).[14] While the issues in these out-of-state cases undisputedly arise in the context of di *61 vorce and separate maintenance actions, Justice YOUNG’S exclusive focus on this context in his analysis of the central teaching of these cases is questionable. From the actual language of these authorities, it seems that each of these cases stands clearly for the proposition that “a tenant by the entireties is entitled to contribution when he or she makes a payment, after the parties discontinue living together as husband and wife, which preserved the property and, therefore, accrued to the benefit of the co-tenant.” Crawford, 293 Md at 313 (emphasis added); see also Turner, 147 Md App at 406 (explaining that Crawford “ ‘permitís] a spouse to seek contribution in those instances when married parties were not residing together and one of them, or the other, had paid a disproportionate amount of the carrying costs of property’ ”) (emphasis added; citation omitted).[15]
When viewed as standing for this core proposition, the persuasive authority from sister states and the *62 instant case have much in common. Janet and Frank Mandeville had “discontinue[dj living together as husband and wife.” Crawford, 293 Md at 312. There was no “showing of an intention to make a gift” on Janet’s part; in fact, the record is replete with evidence to the contrary. Id. at 313. And, Janet made payments that “preserve[d] the property, and therefore, accrue[d] to the benefit of the co-tenant [Frank].” Id. Under this analysis, Janet is entitled to contribution. Id.; see also Turner, 147 Md App at 407. While it is certainly possible to distinguish these cases, as the Court of Appeals and Justice YOUNG have worked hard to do, it is nonetheless difficult to dismiss them because their logic and reasoning closely resemble those of this case. These cases provide persuasive authority on which this Court may rely as it exercises its equitable jurisdiction “to afford remedial relief, where justice and good conscience so dictate.” 30A CJS, Equity, § 93, at 289 (1992).
Third, the dissent warns that granting plaintiff’s requested relief constitutes a “sweeping modification of the common law,” post at 68, “represents a sea-change in our laws governing property,” post at 93, and is the equivalent of recognizing “an action amounting to posthumous divorce.” Post at 97. These concerns are considerably overwrought, and incorrect, largely because they are grounded in a misapprehension that the remedy plaintiff seeks will somehow result in the division of marital real property. However, as has been explained already, contrary to the Court of Appeals’ and Justice Young’s assertions, there is nothing in the relief sought that would in any way “subvert the protective purpose of the tenancy by the entirety . . . .” Tkachik, 282 Mich App at 376. In this case, as in every future case, the “protective purpose of the tenancy by the entirety”— i.e. the unencumbered right of survivorship— *63 will be given full effect, and the surviving spouse would own entirety properties in fee simple absolute.[16]
Moreover, granting plaintiff the monetary compensation she is seeking would not require a “posthumous divorce.” Indeed, this whole concept of “posthumous divorce” is inapposite, and in fact seems quite peculiar,[17] because granting plaintiffs claim for contribution would not require this Court, or any future court, to do anything even remotely akin to rendering a judgment for divorce. Plaintiff is not asking this Court to take off anyone’s wedding ring, decide who gets the family heirlooms, or become involved in any of the hard issues that arise in a divorce, such as child custody, parenting time, and child and spousal support. And, as we have repeatedly made clear in this opinion, granting the relief plaintiff seeks will not divide marital real property. Instead, it will simply require a court to look to the evidence of how much Janet paid in mortgage payments, taxes, insurance, and other costs to maintain the real properties and then award an appropriate amount in the form of contribution.
Justice Young’s final, and most overwrought, argument is that our decision somehow “ignores the fact that *64 marriage has always been recognized in Michigan as a special relationship” and “transforms this... into no more than a mere ‘business partnership.’ ” Post at 81. Thus, our decision is “yet another (however well intentioned) assault on the institution of marriage in our country.” Post at 81. We respectfully suggest that these arguments would be more aptly directed inwardly. It is Justice YOUNG’s dissent that wishes to focus exclusively on the way that property is titled, as if the Mandevilles were mere business partners whose relationships and mutual obligations did not extend beyond their real property transactions, in other words, that a tenancy by the entirety is nothing more than a real property arrangement that is more extra-strongly binding upon persons who are married than upon all other persons. It is Justice YOUNG’s dissent that ignores all evidence concerning the realities of a particular marriage, and that would — exclusively in the case of married persons — subordinate all such realities to the deed itself. Thus, alone among parties to a deed, the realities of the parties’ actual conduct and relationship, and the demands of fairness and equity, would be irrelevant for married parties. Under the rule the dissents would adopt, marriage would indeed define a “special relationship,” but not in a way that honors or respects marriage, but in a way that disadvantages marriage. Married parties alone would be deprived of resort to equity, no matter how compelling the circumstances, and alone would be bound by a legal document, no matter how unfair and inequitable its consequences in a particular circumstance. Marriage indeed entails a “special relationship,” because it involves persons who have vowed to be with their spouse for better or worse, in sickness and in health, and because it gives rise to life-long commitments of a singular nature, not because it comprises a legal arrangement in which persons are forever to be deprived of fundamental principles of equity that apply to all other *65 persons. See Strohm, 352 Mich at 662. To say the least, we do not believe it is this opinion that degrades the genuinely “special relationship” of a marriage, or that treats marriage as tantamount to a mere “business partnership.” The dissents accord “special” treatment to marriage only in the sense of imposing “special” disadvantages upon married persons, and by “specially” depriving such persons of a remedy in equity available to all others.
In sum, the counterarguments presented by defendant, the Court of Appeals, and the dissents are unavailing. No governing legal principle precludes the remedy plaintiff seeks, and no policy concern persuades us that granting this remedy will somehow upset the common law of this state, or produce what Justice Young’s dissent describes as a “ ‘tectonic shift’ ” in our common-law jurisprudence. Post at 68 n 1. Rather, the decision here is altogether consonant with the “incremental process of common-law adjudication as a response to the facts presented.” In re Arbitration Between Allstate Ins Co & Stolarz, 81 NY2d 219, 226; 597 NYS2d 904; 613 NE2d 936 (1993). Therefore, we decide this case by exercising our equitable powers “ ‘according to the circumstances and exigencies of [this] particular case’ ” where no adequate remedy at law exists. Youngs, 317 Mich at 545 (citation omitted). Significantly, the circumstances and exigencies of this particular case contain a limiting principle that provides further assurance that we have properly exercised our discretion in granting equitable relief. Such limiting principle is inherent in MCL 700.2801, which sets forth the circumstances in which a spouse is not a “surviving spouse,” namely, where that spouse has been willfully absent from the decedent spouse for a year or more before the decedent’s passing. As explained, this provision is not the source of this Court’s power to grant plaintiff relief, for we possess an inherent power to afford equitable relief in our sound discretion and under carefully defined cireum *66 stances; rather, it merely provides context for when a spouse’s conduct is so offensive to any “natural sense of justice” that a court may properly act.[18] With this limiting principle in place, any fear that permitting a claim for contribution in the context of a tenancy by the entirety will result in a radical sea-change in the common law of this state rings hollow.
IV CONCLUSION
On the facts of this case, and particularly in considering defendant’s willful absence from his decedent spouse, by which she alone took responsibility for the properties in *67 the last year and a half of her life, it would be unjust for defendant to retain the benefit of the monies that preserved these properties and made his eventual sole ownership possible upon her death. Because divorce is an inappropriate, disproportionate, and ineffectual remedy, an equitable remedy is necessary because there is no adequate remedy at law. Powers, 279 Mich at 447. Accordingly, by extending the doctrine of contribution to co-tenants by the entirety, defendant is properly held hable for the payments that his spouse made in excess of her “aliquot share of the common burden or obligation ....” Caldwell, 394 Mich at 417. Thus, consistent with the longstanding and important principle of our jurisprudence concerning the availability of equitable relief, we conclude that the doctrine of contribution can be appropriately applied between tenants by the entirety and that plaintiffs claim for contribution should be granted. Accordingly, we reverse the judgment of the Court of Appeals and remand to the probate court for proceedings not inconsistent with this opinion.
Kelly, C.J., and Cavanagh and Corrigan, JJ., concurred with MARKMAN, J.

 MCL 700.2801(2) provides, in relevant part:
For purposes of parts 1 to 4 of this article and of section 3203, a surviving spouse does not include any of the following:
(e) An individual who did any of the following for 1 year or more before the death of the deceased person:
(i) Was willfully absent from the decedent spouse.
*43 Parts 1 through 4 of Article II of the Estates and Protected Individuals Code (EPIC), MCL 700.2101 et seq., relate to: (1) intestate succession, (2) spousal elections, (3) spouses or children not provided for in the will, and (4) exempt property and allowances. MCL 700.3203 governs priority among persons seeking appointment as a personal representative.

 The order cited three cases that the parties were directed to consider: Turner v Turner, 147 Md App 350; 809 A2d 18 (2002); Crawford v Crawford, 293 Md 307; 443 A2d 599 (1982); and Cagan v Cagan, 56 Misc 2d 1045; 291 NYS2d 211 (NY Sup Ct, 1968).

 The dissents do not account for this reality in their decisions. Rather, the fact that defendant now owns the properties only because Janet preserved the couple’s undivided interest and prevented foreclosure is determinedly overlooked in the dissenting opinions.

 In fact, not only is plaintiff legally incompetent to divide the marital real properties, Janet herself could not have unilaterally divested defendant of his interest in the properties that they held as tenants by the entirety. Thus, although Janet attempted diligently before her death to defeat the right of survivorship by transferring her interest in the properties by quitclaim deed, this deed was ineffectual in nullifying defendant’s rights in the properties. While Janet’s efforts have no legal significance in regards to defendant’s ownership of the properties, they *51 do evidence her clear intentions regarding whether she wanted defendant to benefit from her preservation of the properties, for which she alone took responsibility in his absence.

 Justice Young’s dissent states that “[t]his is true only to a certain extent.” Post at 81. In light of the reality that defendant owns the properties in fee simple absolute, I fail to see how this is anything but completely true. His dissent itself acknowledges that this decision “does not alter the actual ownership of the property,” but then argues that this analysis “force[s] defendant to compensate the estate for the privilege of such ownership — notwithstanding the fact that both the law and the express means by which the Mandevilles themselves titled their property provide this property to Frank Mandeville with no conditions whatsoever.” Post at 81 (emphasis in original). No one disputes that under the law of tenancy by the entirety, and specifically by right of survivorship, defendant took the properties without any conditions or obligations at law. The open question presented in this case, however, is whether defendant in the instant circumstances is obligated now by equity to contribute his share of the property maintenance payments.

 The analysis and conclusion are the same when the question of whether defendant is unjustly enriched is viewed through a contractual *52 lens. See Mich Med Serv v Sharpe, 339 Mich 574, 577; 64 NW2d 713 (1954) (“Enrichment of [a person or entity] is not unjust if pursuant to the express agreement of the parties, fairly and honestly arrived at before hand.”). The fact that the properties passed to Frank in accordance with the agreement the Mandevilles made when taking title as tenants by the entirety does not preclude a finding that he was unjustly enriched because, once again, plaintiff is not seeking to affect that contract. Permitting a contribution claim to prevent unjust enrichment will not interfere with the parties’ freedom to contract. Janet and Frank contracted to hold the properties by the entirety with a right of survivorship; when defendant is required to pay contribution to plaintiff, this contract will, notwithstanding, already have been given full effect: the properties passed to defendant by right of survivorship, at which point, as now, he held title in fee simple absolute.

 By bringing an action for separate maintenance, a spouse is exposed to a counterclaim and judgment for divorce. See MCL 552.7(2) through (4). Notably, if a counterclaim for divorce is filed, such judgment is mandatory. MCL 552.7(4)(b) (providing that “the court shall enter ... [a] judgment dissolving the bonds of matrimony if a counterclaim for divorce has been filed”) (emphasis added). Thus, if divorce is an inappropriate remedy because of a person’s religious or moral beliefs, separate maintenance is also. Although Justice Young’s dissent does not dispute our understanding of the procedural workings of an action for separate maintenance set forth in the statute, it charges that we do not adequately explain why separate maintenance constitutes an inadequate legal remedy. Post at 82. We offer exactly such an explanation in this section. It is that dissent that owes an explanation of its contrary position to people who have religious or moral objections to divorce.

 Moreover, one wonders how an action for separate maintenance at this juncture could be said to be as “effectual” in “its modes of obtaining... relief,” Powers, 279 Mich at 447, where, for obvious reasons, neither Janet nor her estate can bring such an action.

 The same can be said of a claim for separate maintenance. Justice Young’s dissent argues at length that separate maintenance constituted Janet’s sole remedy in these circumstances. Specifically, it claims this must be true because that “the standard that the majority employs — a breakdown in the marital relationship sufficient to show that the couple is no longer acting as husband and wife — is precisely the standard used in an action for divorce or separate maintenance proceedings.” Post at 83 (emphasis in original). His dissent misapprehends the standard we employ. While the facts of this case certainly evidence a breakdown of the marital relationship, satisfying this standard alone is not what moves us to act in equity. Rather, our decision is based on a fact-specific analysis that takes into account the manner in which this marital relationship broke down, and particularly considers the conduct of defendant as evidence of the nature and extent of the breakdown. Simply put, marriages may break down in a variety of ways that would be sufficient to satisfy the general standard used in an action for separate mainte *55 nance or divorce. However, it is defendant’s inequitable conduct, evidencing the nature of the specific breakdown of this marriage, that satisfies the equitable standard. Thus, contrary to Justice Young’s dissent, the two standards — whether a marriage has broken down sufficiently to grant a judgment for divorce or separate maintenance and whether equity can be invoked to allow contribution between spouses — are distinct. Moreover, regardless of the differences between these standards, separate maintenance is an inadequate remedy in this case.

 In light of these facts, we are confident that allowing equity to come to Janet’s aid, even when she did not seek a divorce or bring an action for separate maintenance while alive, will not upset any legitimate financial arrangement between the Mandevilles. This record leaves little need to speculate about how Janet felt about the “arrangement” by which she took sole responsibility for maintaining the properties at the end of her life after being abandoned by her husband. Again, she unequivocally disinherited him in her will, transferred her retirement benefits, and attempted to divest him of his interest in the marital real properties. Furthermore, plaintiff — Janet’s sister, the person who cared for her in her final months and who is the personal representative of her estate' — is bringing this action on Janet’s behalf. These facts dispel any fear that, by permitting plaintiffs claim for contribution, we are upsetting any arrangement in contravention of Janet’s intent.

 As this list of factors makes clear, contrary to Justice Young’s assertion, our determination that contribution is appropriately applied in *58 this case is based on much more than an “ ‘I know it when I see it’ ” intuition. Post at 95. Rather, it is based on a consideration of the highly unusual and inequitable circumstances of this case. Justice Young’s dissent itself acknowledges that the facts of this case are “rare,” post at 95, but fails to realize that these “rare” facts are precisely what make it appropriate for this Court to do equity.

 Once more, Justice Young’s dissent fails to recognize that we are not construing MCL 700.2801 or any other statutory provision in this case. The issue here only requires this Court to determine whether to exercise its equitable powers where no statute provides for or precludes such an exercise. It does not require us to give effect to any statute. For this reason, granting (or failing to grant) equitable relief cannot possibly contravene “the most basic of judicial interpretative rules.” Post at 86 n 45. It is important to remember, however, that although this Court is not called upon to interpret MCL 700.2801, this provision has already been given full and proper effect by the lower court, a result that is unaltered by this decision. The probate court properly recognized the provision’s limited applicability to the identified sections of EPIC, which relate to intestate succession. It thus held that defendant’s status under MCL 700.2801 is immaterial to his sole ownership of the marital real properties, which passed to him by the right of survivorship, not by intestate succession. In light of this disposition, the statutory argument in Justice Young’s dissent is errant from the start.

 For much the same reason, Justice Young’s observation that “the Michigan Legislature has declined to adopt legislation that would have accomplished statutorily exactly the changes plaintiff seeks in the common law here” has no bearing on the proper result in this case. Post at 99 (emphasis in original). By inserting this observation into its discussion, Justice Young’s dissent misses the critical difference between the respective duties of a legislative body and a court sitting in equiiy. While the Legislature crafts policy for the general public, a court in equity examines “the circumstances and exigencies of [the] particular case.” Youngs, 317 Mich at 545 (citation omitted). Thus, simply because, for whatever reason, the Legislature did not adopt a broad, statewide statutory remedy — and Justice Young has no greater insight into why this transpired than anyone else— does not mean that such a remedy is not appropriate to achieve equity in the particular circumstances of a case. Concerning Justice Young’s allegation that we have “fashion[ed] an unprecedented judge-created rule,’’post at 100, we can only point out, first, that the entirety of the common law constitutes the “fashion[ing of] a judge-created rule,” the dissents’ preferred rule no more and no less than the majority’s; and, second, that, as a case of genuinely first impression, it is quite certain that, whatever rule prevails, it will be one without “precedent,” because this is precisely how the common law has always evolved.

 The Court of Appeals rejected the analysis of these cases because it determined that it was “not applicable in the context of considering whether a decedent’s estate is entitled to contribution from the surviving spouse ....” Tkachik, 282 Mich App at 376. In focusing on the fact that Janet is deceased, the Court of Appeals implied that, if she had been living, she might have been entitled to contribution, while her estate would not be. This implication is inconsistent with MCL 600.2921, which states, “All actions and claims survive death.” If, under the Court of Appeals’ rationale, Janet could have sought contribution from defendant while alive, there is no reason why her estate itself should not also be able to seek contribution. See In re Olney’s Estate, 309 Mich 65, 83; 14 NW2d 574 (1944) (“When the law declares that a cause of action shall survive, it is equivalent to saying an executor may sue upon it.”) (quotation marks and citations omitted).

 Justice Young’s dissent claims that these cases only support our position “when read out of context and after ignoring [these] decisions’ own internal limitations.” Post at 87. In response, one can merely invite the readers to peruse these cases for themselves and judge which of our readings is the more sound. In our judgment, each of these cases stand clearly for the proposition that a tenant by the entirety may be entitled to contribution when he or she makes some payment after the spouses discontinue living together as husband and wife. Crawford, Turner, and Cagan stand for this same proposition. Thus, Justice Young’s dissent does not present the whole story when it asserts that this decision “renders Michigan the one place in the common law world where a tenant by the entirety can now be liable for contribution to his deceased spouse’s estate.” Post at 68. No state whose courts have addressed this specific proposition has rejected it. That is, his dissent insists on focusing on the general rule of non-contribution between tenants by the entirety — a rule with which we agree — rather than the exception to the rule that is the subject of this case, as well as Crawford, Turner, and Cagan. The reader can determine what is most “disingenuous” in this case, post at 91 n 58 — for the dissent to include within its supposed consensus states whose judiciaries have never before addressed the specific issue before this Court, or for this majority to point out the artificiality of that consensus.

 Accordingly, we are not persuaded by Justice Young’s overwrought accusation that this decision “upsets the reliance interests of all Michigan spouses” who have taken title to property as tenants by the entirety. Post at 94. Not only is this inaccurate because the right of survivorship is not affected by this decision, but it imputes ludicrous motives to Michigan spouses. We believe that there are few men and women in Michigan who get married, and who acquire property as tenants by the entirety, in reliance on the fact that they can later abandon their spouses and their marital property, contribute nothing to the maintenance of such property, succeed to the property upon their spouse’s death, and have no further responsibilities at law or in equity. That is the only reliance interest that could conceivably be upset by this decision.

 No more peculiar, however, than Justice Young’s notion that we are “mentally divorcing” the Mandevilles. Post at 97 n 65.

 Justice Young’s dissent is highly critical of our consideration of the surviving-spouse provision, but its own analysis of the role of MCL 700.2801 is simply inaccurate. His dissent treats this provision as controlling, asserting that it precludes this Court from doing equity because “the Legislature actually has acted in this area through its enactment of Michigan’s surviving spouse statute.” Post at 99 (emphasis in original). In view of this assertion, we reiterate that the surviving spouse provision is silent as to contribution and, thus, neither permits nor precludes this Court from granting this remedy. The provision is, however, relevant in this case because it is descriptive of the exact behavior that moves this Court here to act in equity — defendant willfully abandoning his wife during the last 18 months of her life. We know of no principle of statutory construction that bars a court in equity from taking into consideration conduct that is relevant to the equitable claim simply because the Legislature, in an entirely different context, has determined that such conduct is sanctionable.
Accordingly, Justice Young need not wonder, “Where, other than in the guts of the majority, shall we determine how ‘principles of natural justice’ or ‘good conscience’ should direct our decisions?” Post at 96 n 64. If and when a court again encounters these rare facts, its determination of whether a tenant by the entirety is entitled to equitable contribution is to be informed by a time-honored and uncontroversial belief about marriage — i.e., one spouse should not benefit from the abandonment of the other in a time of great need. This belief is reflected in community norms, the teachings of religious traditions, and the non-surviving spouse provision, and, thus, future courts need not concern themselves with our “guts,” but can direct their decisions to these reliable guides.