# STATE OF MICHIGAN

# COURT OF APPEALS

---

JOWHARA ZINDANI and GAMEEL ZINDANI,

      Plaintiff-Appellees,

v

NAGI ZINDANI and ANTESAR ZINDANI,

      Defendant-Appellants.

UNPUBLISHED
March 20, 2018

No. 337042
Wayne Circuit Court
LC No. 15-008059-CZ

---

Before: GLEICHER, P.J., and BOONSTRA and TUKEL, JJ.

PER CURIAM.

Defendants appeal by right the judgment of the trial court, entered after a bench trial, holding defendants jointly and severally liable to plaintiff Gameel Zindani in the amount of $77,441.31.[1] We affirm with regard to defendant Nagi Zindani, but reverse with regard to defendant Antesar Zindani.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Plaintiffs Jowhara and Gameel Zindani and defendant Antesar Zindani are siblings. Defendant Nagi Zindani is their father.[2]

In 2002, Gameel began attending Michigan State University. He testified at trial that he spoke with Nagi about purchasing a home, rather than continuing to rent one, because he believed that he would continue to reside in East Lansing after he finished his schooling. Gameel testified that between 2002 and 2005, he gave Nagi approximately $36,400 of his student loan funds to use as a down payment on the purchase of a home. Nagi purchased a home on River Terrace Drive in East Lansing in 2005. Gameel testified that he was intimately involved in selecting the home and that he believed at all times, based on his conversations with Nagi, that the home would eventually be his. Gameel further testified that he had expected his

---

[1] The judgment also reflects that the trial court ordered "[n]o award for Plaintiff Johwara [sic] Zindani." That part of the judgment is not at issue on appeal.

[2] Because all parties share a surname, this opinion will refer to the parties by their first names.

name to be placed on the deed to the home at closing, but that Nagi insisted at the closing that the home be titled in his name alone. Gameel testified that Nagi indicated that having Gameel's name on the deed might negatively impact Gameel's ability to receive student loans, and that Nagi and Gameel agreed that Nagi "would serve as sort of the proxy on the [mortgage] loan," and that Gameel "would be the ultimate owner, if you will, of the home."

Gameel moved into the home immediately after closing and lived there until 2010. During that time, Gameel gave Nagi approximately $39,000 in additional student loan funds to use for repairs and updates to the home. While Gameel lived in the home, it was also occupied by rent-paying tenants. Gameel collected rent payments from those tenants and turned them over to Nagi. Gameel also testified that he was involved in maintaining the property and hiring contractors to do improvements on the property using his student loan money.

In 2009, unbeknownst to Gameel, Nagi transferred ownership of the home via quitclaim deed to himself, Antesar, and his then-wife, Amrieh Zindani.[3] Notwithstanding evidence of cancelled checks, Nagi testified that he never received any student loan funds from Gameel. However, he later stated that it was "plausible" that he might have received some funds. Nagi denied ever telling Gameel that the home would one day be his, and he stated that he put Antesar on the deed to the home because she had given him money to pay the mortgage and was helpful to him.

Jowhara testified that she lived in the home with Gameel from 2006 to 2009 while attending Michigan State University. She testified that she gave Gameel some of her student loan funds to give to Nagi because Nagi was "after" him for money, although she did not know how Nagi ultimately used the money. She also testified that she gave some of her student loan funds to Gameel to use on improvements to the home, including paying a contractor to configure the basement as a separate unit so that she could live separately from male tenants as required by her culture.

Antesar testified that she had paid taxes on the home. This included claiming a principal residence tax exemption for the home, although she never used the property as her principal residence. Antesar testified to her belief that the home was purchased so that any of the children could use it while studying at Michigan State University or living in the East Lansing area, and for use as a rental property.

Plaintiffs filed suit against defendants and Amrieh in 2015, alleging that the home had been ordered to be sold as part of Nagi and Amrieh's divorce, and seeking $85,000 in money damages based on theories of promissory estoppel, unjust enrichment, and fraud. After a bench trial, the trial court found that Nagi's testimony was contradictory and not credible. The court further found that Antesar had made misrepresentations in filing for a tax exemption for the

---

[3] Amrieh is the mother of the three children and was a party to the proceedings below, but reached a settlement with plaintiffs and was dismissed from the suit by order of the trial court on January 25, 2017. She is not a party to this appeal.

property despite not using it as a primary residence, and stated that it would consider her testimony "very minimally."

The trial court determined that Gameel had provided funds to Nagi to purchase and improve the home based on Nagi's representations that Gameel would ultimately own it. The trial court also found that defendants had been unjustly enriched by Gameel's provision of funds for improvements to the home; additionally, Nagi was enriched by collecting all of the rent from tenants of the property, which was frequently in excess of the amount of the mortgage payment. While the trial court found that Nagi had made promises that Gameel relied upon to his detriment, it declined to find clear and convincing evidence of fraud. With regard to Jowhara, the trial court held she had not proven that she had provided Nagi with any funds in excess of living expenses. Finally, the trial court noted that Antesar currently had a 50% interest in the home. The trial court entered judgment as stated, with the amount determined from the initial funds for the down payment provided by Gameel as well as funds provided by Gameel for improvements to the home.[4]

This appeal followed.

## II. STATUTE OF FRAUDS

Defendants' primary argument on appeal is that plaintiffs' claims were barred by the statute of frauds. We disagree. Defendants asserted a statute of frauds defense in their answer to plaintiffs' complaint, and raised the statute of frauds as an issue at trial. The trial court held that the statute of frauds did not bar plaintiffs' claims. This issue is therefore preserved. *Gen Motors Corp v Dep't of Treasury*, 290 Mich App 355, 386: 803 NW2d 698 (2010). We review de novo as a question of law the trial court's determination that the statute of frauds did not bar plaintiffs' claims. *Zander v Ogihara Corp*, 213 Mich App 438, 441; 540 NW2d 702 (1995).

In Michigan, the form of a contract for the sale of land is dictated by the statute of frauds. *Zurcher v Herveat*, 238 Mich App 267, 277; 605 NW2d 329 (1999). MCL 566.106 provides:

> No estate or interest in lands, other than leases for a term not exceeding 1 year, nor any trust or power over or concerning lands, or in any manner relating thereto, shall hereafter be created, granted, assigned, surrendered or declared, unless by act or operation of law, or by a deed or conveyance in writing, subscribed by the party creating, granting, assigning, surrendering or declaring the same, or by some person thereunto by him lawfully authorized by writing.

And MCL 566.108 provides in relevant part:

---

[4] According to a pre-trial order, plaintiffs' trial exhibits included a list of Gameel's student loan disbursements and cancelled checks for those disbursements, as well as an "itemized list of all items Plaintiffs paid for and supplied to the Property." These exhibits are not part of the record provided to this Court, but appear from context to be the basis for the trial court's calculation of its damages award.

Every contract for the leasing for a longer period than 1 year, or for the sale of any lands, or any interest in lands, shall be void, unless the contract, or some note or memorandum thereof be in writing, and signed by the party by whom the lease or sale is to be made, or by some person thereunto by him lawfully authorized in writing . . . .

"Simply put, therefore, a contract for the sale of land must, to survive a challenge under the statute of frauds, (1) be in writing and (2) be signed by the seller or someone authorized by the seller in writing." *Zurcher*, 238 Mich App at 277.

Defendants argue that there was no evidence of a written agreement between Gameel and Nagi to convey the house to Gameel or to grant Gameel an interest in the property. Defendants are correct in this assertion; however, they are incorrect in their belief that this fact bars plaintiffs' claims. Plaintiffs admitted in their complaint that they had no interest in the home; nor did they allege that defendants had breached a contract for the sale of the home, ask the trial court to find that a valid contract existed either for the sale of the home or to convey to plaintiffs an interest in the home, or seek to have the trial court grant them an interest in the home. Rather, asserting theories of promissory estoppel, unjust enrichment, and fraud, they alleged that they were entitled to reimbursement of funds they had provided to Nagi for the purchase, repair, and updating of the home. The trial court specifically noted that "the Plaintiff's [sic] here are not seeking the return of the property." Further, the trial court did not find that a contract existed relative to the sale of, or any interest in, the home; rather, the trial court found that Gameel had detrimentally relied on promises made by Nagi that Gameel would eventually own the home, and that defendants were unjustly enriched by Gameel's provision of funds to both purchase and improve the home.

The statute of frauds is not applicable to the legal theories under which the trial court found defendants liable in this case. Defendants argue that plaintiffs should be denied the equitable remedies of promissory estoppel (detrimental reliance) or unjust enrichment, because those remedies are not available when a contract is invalidated by the statute of frauds, citing the general principle that a plaintiff may not receive an equitable remedy if an adequate remedy at law exists. *Tkachik v Mandeville*, 487 Mich 38, 46; 790 NW2d 260 (2010). If we understand defendants correctly, their argument is that plaintiff's claim essentially is one for breach of contract, that the law provides a remedy for such claims (although the statute of frauds bars plaintiff's specific claim) and that plaintiffs therefore should be denied equitable relief. We disagree. Our Supreme Court has stated that "estoppel and promissory estoppel have developed to avoid the arbitrary and unjust results required by an overly mechanist application" of the statute of frauds. *Opdyke Inv Co v Norris Grain Co*, 413 Mich 354, 565; 320 NW2d 836 (1982). Moreover, plaintiffs' claim is not for breach of contract; this is not a case in which an oral contract is invalidated by the statute of frauds, as was the case in *Zander*, 231 Mich App at 445. Rather, this is a case in which the trial court found that the elements of promissory estoppel were satisfied, i.e. that a preponderance of the evidence existed that there was

(1) a promise, (2) that the promisor should reasonably have expected to induce action of a definite and substantial character on the part of the promisee, (3) which in fact produced reliance or forbearance of that nature, and (4) in circumstances such that the promise must be enforced if injustice is to be avoided.

[*Joerger v Gordon Food Serv, Inc*, 224 Mich App 167, 173; 568 NW2d 365 (1997).]

Defendants make no argument that these elements were not satisfied, and because a promissory estoppel claim is not universally barred by the statute of frauds defense, *Opdyke Inv Co*, 413 Mich at 365, we discern no error in the trial court's judgment in favor of plaintiffs based on this theory.

Defendants similarly do not argue that the elements of unjust enrichment were not satisfied; rather, they only argue that there was an express (although invalid) contract covering the same subject matter (interest in or sale of the home) as the unjust enrichment claim. The elements of unjust enrichment are "(1) the receipt of a benefit by defendant from plaintiff, and (2) an inequity resulting to plaintiff because of the retention of the benefit by defendant." See *Belle Isle Grill Corp v Detroit*, 256 Mich App 463, 478; 666 NW2d 271 (2003). Where those elements are satisfied, the law will imply a "quasi contractual obligation, upon which recovery may be had . . . ." *Morris Pumps v Centerline Piping, Inc*, 273 Mich App 187, 195; 729 NW2d 898 (2006) (quotation marks and citations omitted). However, an unjust enrichment claim may not lie if there is an express contract covering the same subject matter. *Id*.

Here, the trial court never found that an oral contract existed for the conveyance of the home or any interest in it. There was no evidence introduced at trial showing that any plaintiff had such an agreement with any defendant; rather, the evidence only showed that Gameel had detrimentally relied on Nagi's promise that Gameel would eventually own the home. The evidence introduced at trial did not show the necessary "mutual assent or a meeting of the minds on all the essential terms" needed to find the existence of a contract. *Kloian v Domino's Pizza LLC*, 273 Mich App 449, 453; 733 NW2d 766 (2006). In fact, defendants' counsel specifically argued that no contract between Nagi and Gameel was formed because "there was no offer" and "no consideration" such that "there's not even a valid promise offer [sic] and acceptance that this [sic] was a verbal contract of any kind." And again, plaintiffs were not pursuing a breach of contract claim or arguing the existence of an oral contract, but rather were seeking reimbursement of a benefit they had conferred upon defendants that it would be unjust to allow defendants to retain. See *Belle Isle Grill Corp*, 256 Mich App at 678. Under these circumstances, the trial court did not err by holding that the statute of frauds did not prevent plaintiffs' recovery on a theory of unjust enrichment, although, as discussed later in this opinion, we hold that the theory was erroneously applied with respect to Antesar.

III. LIABILITY OF ANTESAR

Defendants also argue that the trial court erred by holding Antesar jointly and severally liable for the judgment amount. The parties agree that Antesar's liability, if any, must stem from an unjust enrichment theory, as there was no evidence that Antesar made any promises upon which any plaintiffs detrimentally relied. Whether a claim for unjust enrichment may be maintained is a question of law that we review de novo. *Morris Pumps*, 273 Mich App at 193.

Generally, a third party is not unjustly enriched when it receives a benefit from a contract between two other parties, where the third party has not requested the benefit or misled the other parties. *Morris Pumps*, 273 Mich App at 196, quoting 66 AM Jur 2d, Restitution and Implied

Contracts, § 32, p 628. Here, as stated, there was no express contract between Gameel and Nagi, only detrimental reliance and the implied quasi-contractual obligation that arose from Nagi's unjust retention of benefits conferred by Gameel. *Belle Isle Grill Corp*, 256 Mich App at 678; *Joerger*, 224 Mich App at 173. Nonetheless, the rationale of *Morris Pumps* and associated cases is still applicable. Antesar testified that she received a call from an attorney in 2009 who told her that if her parents both agreed, she would be deeded an interest in the home, and she told the attorney "that was perfectly fine." She further testified that she did not become aware that Gameel believed that he had a claim related to the home until the instant case was filed. There were no allegations, there was no evidence, and there was no basis for inferring, that Antesar ever misled plaintiffs or requested that she receive any of the benefits that Gameel conferred upon Nagi. Under these circumstances, we conclude that the first element of an unjust enrichment claim was not satisfied—Antesar did not receive a benefit *from* plaintiffs, but rather was conveyed an interest in property by Nagi. See *Karaus v Bank of New York Mellon*, 300 Mich App 9, 24; 831 NW2d 897 (2012) (stating that "plaintiff has not shown that he conferred a benefit to Mellon, because Mellon acquired its interest in the property through the assignment of the mortgage executed by [another party], not through any action of plaintiff"). And further, because she was "completely uninvolved" in any discussions between Nagi and Gameel, we cannot say that Antesar's retention of any benefit was unjust.[5] *Id*. The fact that some of the value of the property interest that Nagi conveyed to Antesar may have resulted from Nagi's unjust enrichment (relative to Gameel) does not make Antesar liable to Gameel absent some evidence that she requested the benefit or misled Gameel in some way. *Morris Pumps*, 273 Mich App at 196 (noting that "not all enrichment is necessarily unjust in nature.").

Affirmed with regard to defendant Nagi. Reversed with regard to defendant Antesar. Neither party having prevailed in full, no costs may be taxed. MCR 7.219A. We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ Mark T. Boonstra
/s/ Jonathan Tukel

---

[5] The trial court made statements indicating that it believed the quitclaim deed conveying the property to Antesar may have been defective for lack of consideration. However, the trial court acknowledged that the issue of the ultimate disposition of the property was not before it. Nothing in this opinion should be construed as a holding by this Court regarding the chain of title or the validity of any conveyances of the property at issue.