*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MJCC 8 MILE, LLC,

        Plaintiff-Appellee,

v

BASRAH CUSTOM DESIGN, INC., RAFAA
NOCHA, also known as RAFAA DAWOOD,
DMCC, LLC, WEAAM SALIM NOCHA, and
HOLDEN DAWOOD,

        Defendants-Appellants,

and

CHARLES D. BULLOCK, Receiver,

        Appellee.

UNPUBLISHED
April 28, 2022

No. 346969
Wayne Circuit Court
LC No. 17-001663-CB

MJCC 8 MILE, LLC,

        Plaintiff-Appellee,

v

BASRAH CUSTOM DESIGN, INC., DMCC, LLC,
WEAAM SALIM NOCHA, and HOLDEN
DAWOOD,

        Defendants,

and

RAFAA NOCHA, also known as RAFAA
DAWOOD,

No. 357238
Wayne Circuit Court
LC No. 17-001663-CB

-1-

Defendant-Appellant,

and

CHARLES D. BULLOCK, Receiver,

Appellee.

---

Before: JANSEN, P.J., and SERVITTO and RICK, JJ.

PER CURIAM.

In Docket No. 346969, defendants appeal as of right the trial court's judgment granting plaintiff the options of specific performance of a lease agreement or an award of money damages for breach of the lease agreement, entered after a bench trial. Plaintiff elected to enforce the lease agreement, which the trial court ruled permitted plaintiff to exercise an option to purchase two adjacent parcels of real property in Detroit, commonly known as 7451 and 7461 West Eight Mile Road. In Docket No. 357238, defendant Rafaa Nocha (a/k/a Rafaa Dawood) appeals by leave granted the trial court's postjudgment order denying her motion for relief from judgment under MCR 2.612(C)(1)(f). In both Docket No. 346969 and Docket No. 357238, we affirm.

## I. FACTS AND PROCEEDINGS

Brothers Stavros Toma, Amar Toma, and Brian Toma jointly owned a one-third interest in plaintiff. They and their associates formed plaintiff to seize the opportunity to open a medical marijuana dispensary in Detroit following the enactment of the Michigan Medical Marihuana Act, MCL 333.26421 *et seq*. The law restricted the location of dispensaries by imposing minimum distances from schools, religious institutions, liquor stores, other dispensaries, and drug-free zones. Permissible locations for dispensaries were known as "green zones" or "black zones." Defendant Basrah Custom Design, Inc. ("Basrah"), owned green-zone property at 7451 West Eight Mile Road ("7451 Eight Mile") and 7461 West Eight Mile Road ("7461 Eight Mile"). Each of these addresses has its own property tax identification number with the city of Detroit. Basrah used these adjacent properties for a cabinet shop and a store-fixture business, respectively.

In early 2016, Alvin Alosachi entered into a lease agreement with Basrah to open a medical marijuana dispensary in the front part of 7451 Eight Mile. In February 2016, Stavros Toma ("Toma") approached defendant Weaam Nocha ("Nocha"), an owner of Basrah, regarding a lease for Basrah's green-zone property at 7451 Eight Mile. Nocha agreed to terminate Alosachi's lease in favor of a lease with plaintiff. Because Alosachi had already begun demolition work at the property, plaintiff paid $50,000 to compensate Alosachi for termination of the lease and for his demolition expenditures. The lease with plaintiff (referred to as the "First February Lease") included an option to lease the "adjacent property" at 7461 Eight Mile and an option to purchase a two-thirds interest in both properties for $750,000. Exhibits to the lease gave the legal description of 7451 Eight Mile as the front part of Lot 22 in the Garden Homes Subdivision, and the legal description of 7461 Eight Mile as the north 170 feet of Lot 21.

-2-

Toma retained a consultant, Michael Beydoun, to assist plaintiff in obtaining licensing approval from the city. Beydoun determined that 7451 Eight Mile did not have enough parking spaces to satisfy dispensary regulations. Therefore, Toma and Nocha agreed that plaintiff would instead lease 7461 Eight Mile. The parties executed a new lease agreement (the "Second February Lease") that revised the First February Lease by changing the identity of the leased premises to 7461 Eight Mile to satisfy parking requirements for a dispensary license. Plaintiff also agreed to pay $200,000 to compensate Basrah for closure of the store-fixture business. However, the Option to Lease, Option to Purchase, and legal property descriptions in the Second February Lease were not changed. That is, although the Second February Lease provided that plaintiff would be leasing 7461 Eight Mile, it continued to provide the legal description for the leased property that was associated with 7451 Eight Mile, and it provided plaintiff with options to lease and options to purchase the "adjacent" property, which was identified as 7461 Eight Mile (i.e., the property now being leased under the Second February Lease). Nocha's spouse, defendant Rafaa Nocha ("Rafaa"), was allegedly opposed to Nocha's dealings with plaintiff because she believed the lots had greater market value than stated in the Option to Purchase.

According to Nocha, Toma refused to pay rent in accordance with the lease. According to Toma, Nocha demanded payments before plaintiff's rent obligation commenced because Nocha was experiencing serious financial difficulty. In any event, the parties later executed a renegotiated lease in November 2016 (the "November Lease") that, among other changes, reduced plaintiff's monthly rent from $10,000 to $5,000, but increased the price for the Option to Purchase to $1,200,000. Nocha afterward contended that Toma tricked him into signing an unfairly disadvantageous lease. Allegedly, Rafaa influenced Nocha to believe that he had been cheated in the renegotiated November Lease. Nocha refused to honor the lease and denied plaintiff possession of the leased property. Nocha also transferred plaintiff's application for a dispensary license to defendant DMCC, LLC, a company owned by Nocha and Rafaa's son, defendant Holden Dawood ("Holden"). Holden obtained the license and opened the dispensary.

Plaintiff filed this action against Basrah, Nocha, Rafaa, Holden, and DMCC for breach of the November Lease and related claims. Following a bench trial, the trial court found that the November Lease was valid and that defendants breached the lease. The trial court's judgment gave plaintiff a choice of remedies: the equitable remedy of enforcing the November Lease and exercising the Option to Purchase, which the court ruled applied to both 7451 and 7461 Eight Mile, or rescission of the lease and an award of money damages. Plaintiff elected to exercise the Option to Purchase.

After a judgment was entered, but before plaintiff's motion for attorney fees was decided, the trial judge, on his own motion, disqualified himself on the ground that his "continued assignment would create an appearance of impropriety." The disqualification order did not identify the factual basis for this belief.

In November 2020, after the case had been reassigned to a different judge, defendants moved for relief from judgment under MCR 2.612(C)(1)(f), on the ground of judicial misconduct by the trial judge. The motion alleged that the trial judge used an intermediary, Omar Chibib, to solicit money and gifts from Nocha in exchange for a favorable outcome in the litigation. Nocha executed an affidavit in which he averred that Chibib approached him and introduced himself as a person close to the trial judge. According to Nocha, before and after trial, Chibib demanded

-3-

payments of money and gifts to ensure a favorable outcome. He warned Nocha that plaintiff would buy the judge's favor if Nocha did not. In support of these allegations, Nocha provided screen shots of text messages from Chibib and photographs of Chibib with the trial judge. Rafaa also presented evidence that the trial judge personally visited the store of Nocha's brother-in-law, Samir Hamama, on June 28, 2019, the day after the case was administratively closed because of Nocha's bankruptcy case, and delivered a copy of the December 7, 2018 judgment to Hamama. The judge told Hamama that the judgment would force Nocha to sell the property at issue in order to pay a debt that Nocha owed to Hamama, and he suggested that Hamama review the judgment with Nocha. A security video recording captured the trial judge and Hamama at the store on that date. Nocha later contacted the Federal Bureau of Investigation (FBI), which initiated an investigation of the allegations.

Defendants argued that the trial judge's conduct created a strong appearance of impropriety that warranted relief from judgment and a new trial. Defendants requested an evidentiary hearing to explore Nocha's allegations. The trial court denied defendants' motion for relief from judgment without conducting an evidentiary hearing. The court noted that Nocha had essentially admitted in his affidavit that he attempted to bribe the trial judge. The court commented on its belief that aspects of Nocha's allegations were implausible, and that Nocha failed to allege specific facts, such as the time and place of payments. The court acknowledged that the trial judge's visit to Hamama's store was unusual and suspicious, but emphasized that defendants had failed to allege that plaintiff was directly involved in any bribery scheme or that plaintiff did anything improper to obtain a favorable judgment. This Court granted Rafaa's application for leave to appeal the order denying her motion for relief from judgment and consolidated the appeal with defendants' pending appeal in Docket No. 346969.[1]

## II. STANDARDS OF REVIEW

We review a trial court's findings of fact in a bench trial for clear error, and review its legal conclusions de novo. *Chapdelaine v Sochocki*, 247 Mich App 167, 169; 635 NW2d 339 (2001). "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed." *Home-Owners Ins Co v Perkins*, 328 Mich App 570, 579; 939 NW2d 705 (2019) (quotation marks and citation omitted). We also review de novo a trial court's decision to grant or deny equitable relief. *Johnson v USA Underwriters*, 328 Mich App 223, 839-840; 936 NW2d 834 (2019). Questions concerning the interpretation of a lease agreement are also reviewed de novo, in accordance with principles of contract interpretation. *In re Smith Trust*, 480 Mich 19, 24; 745 NW2d 754 (2008). A trial court's decision on a motion to set aside an order or judgment under MCR 2.612(C)(1) is reviewed for an abuse of discretion. *CD Barnes Assoc, Inc v Star Heaven, LLC*, 300 Mich App 389, 421-422; 834 NW2d 878 (2013).

---

[1] *MJCC 8 Mile, LLC v Basrah Custom Design, Inc*, unpublished order of the Court of Appeals, entered June 18, 2021 (Docket No. 357238).

## III. MOOTNESS

Preliminarily, we disagree with plaintiff's argument that this appeal is moot because defendants have conveyed the subject property to plaintiff. "A case is moot when it presents only abstract questions of law that do not rest upon existing facts or rights." *B P 7 v Bureau of State Lottery*, 231 Mich App 356, 359; 586 NW2d 117 (1998). "An issue is deemed moot when an event occurs that renders it impossible for a reviewing court to grant relief." *Id.* "As a general rule, an appellate court will not review a moot issue." *City of Jackson v Thompson-McCully Co, LLC*, 239 Mich App 482, 493; 608 NW2d 531 (2000). Defendants sold the property to plaintiffs only because they were required to do so under the trial court's judgment, which defendants are appealing, and defendants' motion for stay was denied. The property remains in the control of plaintiff, who is not a bona fide purchaser for value. *Penrose v McCullough*, 308 Mich App 145, 152; 862 NW2d 674 (2014); MCL 565.29. Plaintiff was well aware that defendants had contested the validity of the November Lease, and that defendants had appealed the judgment granting plaintiff the option of specific performance. Defendants can receive relief if we determine that defendants are entitled to a return of all or a portion of the disputed property. Accordingly, this appeal is not moot.

## IV. SUFFICIENCY OF PLAINTIFF'S PLEADINGS

Defendants argue that the trial court exceeded its authority by reforming the November Lease because plaintiff's complaint did not plead a claim for reformation. We disagree.

As more fully explained below, the record indicates that the trial court did not purport to reform the November Lease, but instead interpreted the lease by applying ordinary contract principles. Regardless, plaintiff's failure to specifically plead a claim for reformation did not preclude the trial court from otherwise enforcing the Option to Purchase provision in the November Lease in accordance with its determination of the parties' intent.

"Equity jurisprudence molds its decrees to do justice amid all the vicissitudes and intricacies of life." *Tkachik v Mandeville*, 487 Mich 38, 45-46; 790 NW2d 260 (2010) (quotation marks, citations, and alterations admitted). A court sitting in equity has " 'broad and flexible jurisdiction . . . to afford remedial relief, where justice and good conscience so dictate.' " *Id.* at 46, quoting 30A CJS, Equity, § 93, at 289 (1992). "Equity allows 'complete justice' to be done in a case by 'adapt[ing] its judgment[s] to the special circumstances of the case.' " *Tkachik*, 487 Mich at 46, quoting 27A Am Jur 2d, Equity, § 2, at 520-521. The court's equitable powers include the authority to reform contracts. "Michigan courts sitting in equity have long had the power to reform an instrument that does not express the true intent of the parties as a result of fraud, mistake, accident, or surprise." *Johnson Family Ltd Partnership v White Pine Wireless, LLC*, 281 Mich App 364, 371-372; 761 NW2d 353 (2008). It is not open to question that a court of equity may grant relief by reforming an instrument of conveyance on the basis of mutual mistake. *Id.* at 372.

As discussed in greater detail below, the remedies that the trial court offered to plaintiff were consistent with plaintiff's complaint. Plaintiff sought enforcement of the November Lease. The trial court purported to enforce the lease as it interpreted it. To the extent that the trial court's decision can be characterized as reformation of a contract to conform to the parties' intent,

plaintiff's failure to specifically plead a claim of reformation does not render its decision erroneous.

## V. OPTION TO PURCHASE

Defendants argue that the trial court erred by determining that the parties mutually agreed for plaintiff to lease 7461 Eight Mile Road rather than 7451 Eight Mile Road, and that the parties intended for the Option to Purchase to apply to both parcels. We disagree with both of defendants' arguments.

In both the Second February Lease and the November Lease, the parties agreed that plaintiff would lease 7461 Eight Mile Road. However, the legal description for the leased property in the attached Exhibit A referred to Lot 22, which is the legal description for 7451 Eight Mile. Further, Exhibit B gave the legal description for the "adjacent property" as Lot 21, which is the legal description for 7461 Eight Mile. The Option Provision states, in pertinent part:

> Tenant shall have the option during the Term to purchase *the Property* from Landlord for the sum of One Million Two Hundred Thousand Dollars ($1,200,000), as set forth in Exhibit C. [Emphasis added.]

This provision limits the scope of the Option to Purchase to "the Property," which is set forth in Paragraph 1 of the November Lease, which provides, in pertinent part:

> Landlord leases to Tenant, and Tenant rents from Landlord, . . . the premises commonly known as 7461 W. 8 Mile Road, Detroit, Michigan, . . . as legally described on Exhibit A which is attached ("Property"), . . . .

Although Exhibit A listed the property address as "7461 W 8 Mile Road," it listed the legal description for 7451 Eight Mile. The trial court determined that the parties intended in both the Second February Lease and the November Lease that plaintiff would lease 7461 Eight Mile, which had adequate parking for the dispensary.

Leases are interpreted according to the same principles governing interpretation of contracts. *In re Smith Trust*, 480 Mich at 24. "In interpreting a contract, it is a court's obligation to determine the intent of the parties by examining the language of the contract according to its plain and ordinary meaning." *Id*. The parol-evidence rule "prohibits the use of extrinsic evidence to interpret unambiguous language within a document," but if a contract is ambiguous, the court may consult extrinsic evidence to determine the parties' actual intent. *Shay v Aldrich*, 487 Mich 648, 667; 790 NW2d 629 (2010); *In re Smith Trust*, 480 Mich at 24. "An ambiguity may be either patent or latent. . . . [E]xtrinsic evidence may not be used to identify a patent ambiguity because a patent ambiguity appears from the face of the document. However, extrinsic evidence may be used to show that a latent ambiguity exists." *Shay*, 487 Mich at 667. "Because the detection of a latent ambiguity requires a consideration of factors outside the instrument itself, extrinsic evidence is obviously admissible to prove the existence of the ambiguity, as well as to resolve any ambiguity proven to exist." *Id*. at 668 (quotation marks and citation omitted).

The Second February Lease and the November Lease were ambiguous because the address and the legal description of the leased property did not match. Additionally, the Second February

Lease's Option to Lease stated that plaintiff had the option to lease 7461 Eight Mile, which was the property that was the subject of the lease. Toma and Beydoun testified that the parties decided to change the leased premises to 7461 Eight Mile to satisfy the parking requirement for the dispensary application. Nocha testified that changing the address meant that he would have to close his store-fixture business at 7461 Eight Mile. The trial court did not err by determining that the parties mutually intended the November Lease as a lease to rent 7461 Eight Mile.

Alternatively, the trial court's decision can be characterized as reformation of the November Lease to conform to the parties' intent. When an instrument is drafted with the intention of carrying into execution an agreement between the parties, but which by mistake of the scrivener or draftsman does not fulfill the intention of the parties, there is a basis in equity to correct the mistake through reformation of the instrument. *Scott v Grow*, 301 Mich 226, 239-240; 3 NW2d 254 (1942). The court may consider parol evidence in determining whether a mistake was made. *Id*. at 240. Reformation will not be granted "unless it is established by clear and satisfactory evidence that a mutual mistake of a substantial and material fact has been made by the parties." *Biondo v Ridgemont Ins Agency, Inc*, 104 Mich App 209, 212; 304 NW2d 534 (1981). The trial court acted in accordance with these principles by determining that the conflicting legal descriptions were in error, and the court did not clearly err by finding that the parties intended for the lease to apply to 7461 Eight Mile.

Next, defendants raise issue with regard to the trial court's interpretation of the Option to Purchase in the November Lease. The Option to Purchase provision in the November Lease provided plaintiff with the option to purchase "the Property . . . as set forth in Exhibit C." As noted, the meaning of the term "the Property" as listed in Paragraph 1 of the November Lease referred to "the premises commonly known as 7461 W. 8 Mile Road, Detroit, Michigan." Exhibit C contains additional terms for exercising the Option to Purchase, but it does not further describe or expand the scope of the property that is subject to that option.

The Option to Purchase provision in the First February Lease stated:

> Beginning on November 1, 2017, and provided Tenant is not in default of this Lease beyond any applicable cure period, Tenant shall have the option during the remainder of the Term to purchase a two-thirds (2/3) undivided interest in the Premises and the Adjacent Property (the Premises and Adjacent Property are collectively referred to as the "**Option Property**"), as a tenant in common with Landlord, from Landlord under the terms and conditions set forth on attached **Exhibit C** (the "**Purchase Option**"), which may be exercised by providing notice to Landlord as required under this Lease.

The Second February Lease contained this same provision. Conversely, the November Lease Option to Purchase states, in pertinent part:

> Beginning on the Effective Date, provided Tenant is not in default of this Lease beyond any applicable cure period, Tenant shall have the option during the Term to purchase the Property from Landlord for the sum of One Million Two Hundred Thousand Dollars ($1,200,000), as set forth in Exhibit C.

Exhibit C, ¶ 1, provided:

> Tenant may exercise this Option by giving a written notice of exercise (**"Notice of Exercise"**) to Landlord any time during the Term of the Lease (the **"Option Term"**). The Notice shall state that Tenant is exercising its right to purchase the Option Property and Tenant's desired closing date . . . .

The purchase price was stated as $1,200,000. Exhibit C used the term "option property" in reference to the landlord's title insurance commitment. Paragraph 4.3, "Condition of Option Property," states that the tenant "has been in possession of the Option Property and upon exercising its option to purchase the Option Property agrees to accept them in their 'AS IS' condition." The term "option property" is also used in the "Landlord's Closing Obligations" provision and the "Closing Adjustments, Credits and Prorations" provision. However, unlike the First and Second February Leases, the term "Option Property" is not defined anywhere in the November Lease.

The trial court's judgment granted plaintiff the option to purchase *both* 7451 and 7461 Eight Mile for $1,200,000. By doing so, the trial court implicitly found that the Option to Purchase provision in the November Lease applied to both the leased premises and the adjacent property. The trial court's findings of fact and conclusions of law do not address the differences between the Option to Purchase provisions in the February and November Leases.

However, it is clear that the trial court permissibly considered parol evidence to define the term "Option Property" to include both addresses where a latent ambiguity existed. *Shay*, 487 at 667-668. Toma testified several times that plaintiff understood the Option to Purchase provision in the November lease to pertain to "the whole property," and stated that 7451 and 7561 Eight Mile were "one building." Rafaa's text messages were entered into evidence, wherein she proposed that the option to purchase the "building" be increased from the original $750,000 to $1.5 million, $1.25 million, or $1.2 million. Beydoun testified that the property was considered one building, but recommended separation into two addresses for the paperwork filed with the city to obtain the dispensary permit. The November Lease Option to Purchase allows plaintiff the option "to purchase *the Property*," which is defined in the lease as 7461 Eight Mile, although the attached Exhibit A provided the legal description that is associated with 7451 Eight Mile, an ambiguity that the trial court correctly resolved by changing the legal description to match 7461 Eight Mile. While the mismatch of the addresses and legal descriptions in the February and November Leases appear to be the result of an oversight, in which the parties copied and attached the First February Lease Exhibits without correcting the match, the Option to Purchase in the November Lease was substantially rewritten. The November Option to Purchase rewrote the prior leases' Option to Purchase by changing the price and plaintiff's share of ownership interest. The purchase price was increased from $750,000 for two thirds of the property to $1.2 million—a substantial increase which demonstrates that the parties' intent was for the Option to Purchase to apply to both properties. Therefore, there was sufficient evidence for the trial court to conclude that the Option to Purchase applied to both 7451 and 7461 Eight Mile Road.

## VI.  VALIDITY OF NOVEMBER LEASE

Defendants argue that the November Lease is unenforceable because it was unsupported by consideration.  We disagree.

"A valid contract requires five elements:  (1) parties competent to contract, (2) a proper subject matter, (3) legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation."  *Innovation Ventures v Liquid Mfg*, 499 Mich 491, 508; 885 NW2d 861 (2016) (quotation marks and citation omitted).  " 'To have consideration there must be a bargained-for exchange'; '[t]here must be a benefit on one side, or a detriment suffered, or service done on the other.' "  *Id*., quoting *Gen Motors Corp v Dep't of Treasury*, 466 Mich 231, 238-239; 644 NW2d 734 (2002).  "Generally, courts do not inquire into the sufficiency of consideration:  '[a] cent or pepper corn, in legal estimation, would constitute a valuable consideration.' "  *Innovation Ventures*, 499 Mich at 508, quoting *Gen Motors Corp*, 466 Mich at 239.

MCL 566.1 provides:

> An agreement hereafter made to change or modify, or to discharge in whole or in part, any contract, obligation, or lease, or any mortgage or other security interest in personal or real property, shall not be invalid because of the absence of consideration: Provided, That the agreement changing, modifying, or discharging such contract, obligation, lease, mortgage or security interest shall not be valid or binding unless it shall be in writing and signed by the party against whom it is sought to enforce the change, modification, or discharge.

The November Lease was a modification of the parties' prior agreement to lease 7461 Eight Mile.  It addressed the same subject matter as the Second February Lease.  Both parties validly executed the November Lease.  Defendants have abandoned on appeal their prior argument that Nocha did not understand what he was signing.  Accordingly, the November Lease was enforceable without additional consideration.  In any event, the November Lease was supported by consideration.  Although plaintiff's rent obligation was reduced, plaintiff agreed to pay a sum of $180,000 toward Nocha's debts.  Plaintiff also agreed to a higher price for the Option to Purchase.

Defendants also argue that the November Lease was not a modification of a prior lease because the Second February Lease was for 7451 Eight Mile, not 7461 Eight Mile.  As discussed earlier, however, the evidence clearly established that the parties intended for plaintiff to lease 7461 Eight Mile, and the mismatched descriptions were a mutual mistake.  Defendants also argue that the change from a triple net lease to a gross lease required additional consideration because the change was disadvantageous to defendants.  This argument is without merit because it involves the sufficiency of consideration, not the want of consideration.  This Court will not inquire into the sufficiency of the consideration. *Innovation Ventures*, 499 Mich at 508.

## VII.  NOCHA'S MEMBERSHIP INTEREST IN PLAINTIFF

Defendants argue that the trial court's decision is unclear or inconsistent with respect to whether Nocha was divested of his ownership interest in plaintiff.

Although the trial court did not expressly state whether Nocha lost his membership interest in plaintiff, it found that the November Lease was valid and binding, and that lease agreement contains a provision that it supersedes any prior or contemporaneous agreements. The November Lease omitted all language granting or recognizing Nocha's membership interest in plaintiff. It follows, therefore, that Nocha was divested of his interest when Basrah entered into the November Lease with plaintiff.

Defendants' argument that the trial court's opinion suggests otherwise is without merit. The trial court found that plaintiff suffered damages resulting from Basrah's breach of the lease, which included "$85,500 paid to Mr. Nocha, $20,000 paid to Michael Beydoun, $13,658.72 paid for roof repairs . . . and lost business." In the same paragraph, the trial court found that "Defendants have also suffered damages of loss profits (assuming Mr. Nocha was a member of MJCC), los[t] rent and build out expenses." Additionally, in its footnote explaining the remedy options, the trial court stated, "Defendants are entitled to some compensation for the building, lost rent and Nocha's interest in the license for MJCC." In Paragraph 118, the trial court's parenthetical phrase "assuming Mr. Nocha was a member of MJCC" indicates that the court was not making a finding of Nocha's membership, but was instead indicating that defendants suffered a loss of profits *if* Nocha indeed retained his membership. The court's statement that Nocha lost his "interest in the license for MJCC" does not necessarily have the same meaning as "membership" or "ownership" in the corporate entity. The phrase could mean merely that Nocha lost benefits associated with leasing property to a profitable dispensary. Thus, these statements do not contradict the inference that the November Lease extinguished Nocha's prior membership.

Nocha cites MCL 450.4509, which provides:

(1) A member may withdraw from a limited liability company only as provided in an operating agreement. A member withdrawing pursuant to an operating agreement may become entitled to a withdrawal distribution as described in section 305.

(2) An operating agreement may provide for the expulsion of a member or for other events the occurrence of which will result in a person ceasing to be a member of the limited liability company. [Footnote omitted.]

Toma testified that an operating agreement was drafted, but never signed. Accordingly, there was no restriction on the manner in which Nocha could relinquish his membership.

To the extent that defendants' brief presents additional, unrelated arguments attacking the trial court's decision, because these additional arguments were not included in defendants' statement of questions presented, they have not been properly presented on appeal. Accordingly, we decline to consider them. *Seifeddine v Jaber*, 327 Mich App 514, 521; 934 NW2d 64 (2019).

## VIII. DENIAL OF MOTION FOR RELIEF FROM JUDGMENT

In Docket No. 357238, Rafaa argues that the trial court erred by denying defendants' motion for relief from judgment and request for an evidentiary hearing. We disagree.

MCR 2.612(C)(1) provides the following grounds for setting aside an order or judgment:

-10-

(1) On motion and on just terms, the court may relieve a party or the legal representative of a party from a final judgment, order, or proceeding on the following grounds:

(a) Mistake, inadvertence, surprise, or excusable neglect.

(b) Newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under MCR 2.611(B).

(c) Fraud (intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party.

(d) The judgment is void.

(e) The judgment has been satisfied, released, or discharged; a prior judgment on which it is based has been reversed or otherwise vacated; or it is no longer equitable that the judgment should have prospective application.

(f) Any other reason justifying relief from the operation of the judgment.

Defendants requested relief from judgment under Subsection (1)(f). "In order for relief to be granted under MCR 2.612(C)(1)(f), the following three requirements must be fulfilled: (1) the reason for setting aside the judgment must not fall under subsections a through e, (2) the substantial rights of the opposing party must not be detrimentally affected if the judgment is set aside, and (3) extraordinary circumstances must exist that mandate setting aside the judgment in order to achieve justice." *Heugel v Heugel*, 237 Mich App 471, 478-479; 603 NW2d 121 (1999). An evidentiary hearing may be appropriate to ascertain the facts relevant to a claim that a judgment or order should be reversed for fraud or other adverse circumstances. See *Burnett v Ahola*, 501 Mich 1055; 909 NW2d 827 (2018) (vacating in part this Court's decision and directing this Court to remand to the trial court for an evidentiary hearing to determine whether the plaintiff committed intrinsic fraud or fraud on the court).

The trial court determined that defendants' motion and Nocha's affidavit failed to establish grounds for relief from judgment or an evidentiary hearing. The motion was supported by an affidavit from Nocha, who described numerous contacts with Chibib, a person who represented himself as an intermediary for the trial judge and demanded money and gifts to influence a favorable outcome in defendants' case. The alleged contacts were corroborated by text messages and photographs, which were submitted in support of the motion. Defendants also submitted evidence documenting that the trial judge personally visited the store of Nocha's brother-in-law, Hamama, and left a copy of the December 7, 2018 judgment with Hamama. Plaintiff's motion for attorney fees was still pending at that time. The trial court acknowledged that the trial judge's visit to Hamama's store was unusual, but concluded that it did not entitle defendants to relief because it did not prove wrongdoing by plaintiff, prove extortion or coercion, or justify disturbance of the judgment issued months before.

The trial court did not abuse its discretion by denying defendants' motion for relief from judgment. We note that both defendants filed the motion in the trial court, but only Rafaa seeks relief on appeal. This appears to be a strategic decision by Rafaa, based on her argument that she

had no direct involvement in the alleged bribery scheme. The doctrine of unclean hands is "a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief . . . . Any willful act that transgresses equitable standards of conduct is sufficient to allow a court to deny a party equitable relief." *New Prods Corp v Harbor Shores BHBT Land Dev, LLC*, 331 Mich App 614, 627; 953 NW2d 476 (2019) (quotation marks and citations omitted). Rafaa had a long history of involvement in Nocha's business decisions. She said Nocha was "like a baby," and could not do anything without her. She was directly involved in renegotiating the three leases with plaintiff, seeking more money for the property. On this basis, we cannot grant Rafaa any relief that she seeks on appeal, and the trial court did not abuse its discretion in denying defendants' motion.[2] The issue of any judicial impropriety is better left to the investigating authorities currently involved based on the lack of findings regarding those allegations.

## IX. CONCLUSION

In Docket No. 346969, we affirm the trial court judgment granting plaintiff the option of specific performance of the lease, which plaintiff elected to do by exercising the Option to Purchase. In Docket No. 357238, we affirm the trial court's postjudgment order denying defendants' motion for relief from judgment.

/s/ Kathleen Jansen
/s/ Deborah A. Servitto
/s/ Michelle M. Rick

---

[2] Our conclusion that Rafaa has unclean hands is further supported by the fact that both Basrah and Rafaa filed for bankruptcy during the course of these proceedings, the bankruptcy court dismissed their cases, finding that bankruptcy was filed to avoid enforcement of the trial court's judgment, and prohibited defendants or anyone in their family from filing for bankruptcy for several years.

-12-